**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Bob CARPENTER, Respondent.**

**OBAD No. 1048.
SCBD No. 3801.**

Supreme Court of Oklahoma.

June 22, 1993.

Gloria Miller White, Asst. General Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Richard D. Laquer, Oklahoma City, for respondent.

OPALA, Justice.

In this disciplinary proceeding against a lawyer the issues to be decided are: (1) Is

the record, consisting of the stipulated facts, a trial transcript and two depositions, sufficient for a meaningful *de novo* consideration of the disciplinary proceeding's disposition? and (2) Is a six-month suspension, to be followed by a two-and-one-half-year post-reinstatement probation, an appropriate disciplinary sanction to be imposed for respondent's professional misconduct? We answer both questions in the affirmative.

The Oklahoma Bar Association [Bar] charged Bob Carpenter [Carpenter or respondent], a licensed lawyer, with five counts of professional misconduct. The Bar and Carpenter then entered into a stipulation of facts and agreed conclusions of law with a joint recommendation for a six-month suspension to be followed by a supervised two-and-one-half-year post-reinstatement probation as professional discipline for that misconduct. A panel of the Professional Responsibility Tribunal [PRT] adopted the parties' offer for an agreed disposition of the proceeding.

## STIPULATION OF FACTS

### Count 1

Respondent made several non-interest-bearing loans to Brenda Tinner while he represented her in a claim for bodily injury. On June 8, 1987 he deposited a $1,500 settlement check into his *operating account.* Nine days later he issued a check to Tinner for $750, which represented her portion of the settlement *minus $195 that respondent had previously lent her.*

### Count 2

Respondent represented Claude Tucker in a claim for workers' compensation. On October 16, 1987, after the case was settled, respondent deposited a check for $3,850 in his trust account. He later issued two checks to Tucker, totalling $3,700. Respondent *withheld $150 as repayment for the money he had lent Tucker during the pendency of his case.*

### Count 3

Respondent represented Kim Frazier in a claim for bodily injury on a 40 percent contingent-fee basis. He deposited a $1,700 settlement check into his trust account. On June 18, 1987 he issued two checks to Frazier from his trust account— one for $300 and the other for $600. Respondent kept the remaining $800, which reflected his $680 fee and *$120 as repayment for money respondent lent Frazier.*

### Count 4

Respondent represented Sherry Knox and Angelita Richardson in their claims for bodily injury. During his representation, *respondent made loans of $120 to Knox and $125 to Richardson.*

### Count 5

Kelly Jo Pitts hired respondent in 1987 to manage stocks she had inherited. He was to secure a transfer of these stocks from Ohio to Oklahoma. As Pitts needed money, respondent was to sell the stocks and remit the funds to her. Pitts, an 18–year–old girl who had never managed a checking account, was believed incapable of handling her financial affairs. On January 15, 1987 Pitts' former lawyer in Ohio transferred the balance of her funds to respondent, who *deposited them in his operating account.* Respondent helped Pitts open a checking account and an account with an investment company. On February 26, 1987 Pitts executed a power of attorney in favor of respondent, but retained the power to deal directly with her property. She signed several undated letters which state that funds in blank amounts were received from respondent. In June of 1987 respondent opened a trust account and deposited in it all his clients' funds, including those of Pitts. From January 15, 1987 through August 8, 1988 respondent handled $59,715.38 of Pitts' money, which he entrusted to persons working in his office *without adequately supervising them.* Because *respondent did not keep sufficient records,* all of these funds cannot be accounted for by tracing them to the point of receipt. Through reconstruction of records, and with the aid of respondent's testimony, all of the funds were later identified. While Pitts would testify that respondent never

intentionally converted any of these funds, it is undisputed that on several occasions *before* Pitts received her money, *respondent's trust account balance fell below the amount he was holding for her.*

## AGREED CONCLUSIONS OF LAW

The parties' stipulation concedes, and we agree, that Carpenter's misconduct violates several provisions of the Code of Professional Responsibility[1] and constitutes grounds for professional discipline. Re-

1. The offending past conduct, which forms the foundation for the charges against this respondent, took place when the Code of Professional Responsibility was in force. The Rules of Professional Conduct, 5 O.S.Supp.1988, App. 3–A, effective from July 1, 1988, now supersede the Code.

2. The terms of DR 5–103(B), Code of Professional Responsibility, 5 O.S.1981, Ch. 1, App. 3, provide:
   "(B) While representing a client in connection with contemplated or pending litigation, a lawyer *shall not advance or guarantee financial assistance to his client,* except that a lawyer may advance or guarantee the expenses of litigation, including court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence, provided the client remains ultimately liable for such expenses." (Emphasis added.)
   The present post-code counterpart of DR 5–103(B) is Rule 1.8(e), Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A. The terms of both are identical.

3. *Okl. Bar Ass'n v. Boettcher,* Okl., 798 P.2d 1077 (1990); *State ex rel. Okl. Bar Ass'n v. Smolen,* Okl., 837 P.2d 894, 895 (1992). The dissent makes reference to my position in *Smolen, supra* at 901 (Opala, J., concurring). In that case I counseled "the court *either* (a) to await the final text of Restatement [ (Third) of the Law Governing Lawyers, tentative draft no. 4, § 48, April 10, 1991] before launching an all-out *legislative drive* for the Rule's change *or* (b) to have a Bar committee formulate an *interim revision* of Rule 1.8(e) to become effective pending adoption of the *final* text of Restatement." [§ 48, Restatement (Third) of the Law Governing Lawyers]. There, I made an appeal *"for an orderly change* in the course of charting the permissible bounds of lawyers' conduct ... by our *measured and restrained legislative response after* full consultation with the Bench, the practising Bar as well as with the academic legal community." *Id.* at 906–907 (emphasis in the original).

4. The terms of DR 9–102(A), Code of Professional Responsibility, 5 O.S.Supp.1983, Ch. 1, App. 3, are:

spondent lent money to five clients in violation of DR 5–103(B).[2] (*Counts 1 through 4*). The cited rule prohibits attorneys from financially assisting clients, except in certain circumscribed instances.[3] He commingled the funds of two clients with his own in violation of DR 9–102(A).[4] (*Counts 1 and 5*). Carpenter failed to keep a proper account of a client's funds in violation of DR 9–102(B)(3)[5] and failed to deliver promptly the funds to his client in violation of DR 9–102(B)(4).[6] (*Count 5*).

"(A) *All funds of Clients paid to a lawyer* or a law firm, excluding advances for costs and expenses, *shall be deposited in one or more identifiable bank or savings and loan association accounts* maintained in the state in which the law office is situated and *no funds belonging to the lawyer or law firm shall be deposited therein....*" (Emphasis added.)
The present post-code counterpart of DR 9–102(A) is Rule 1.15(a), Rules of Professional Conduct, *supra* note 1. For other cases of "commingling" see *State ex rel. Okl. Bar Ass'n v. Geb,* Okl., 494 P.2d 299, 301–302 (1972) (commingling of and failing to remit promptly client's funds warrants one-year suspension); *State ex rel. Okl. Bar Ass'n v. Hensley,* Okl., 560 P.2d 567, 569 (1977) (commingling of client's funds sanctioned by suspension from practice for two years in absence of prior reprimand or misconduct); *State ex rel. Okl. Bar Ass'n v. Stephenson,* Okl., 798 P.2d 1078, 1080 (1990) (attorney's misconduct in failing to maintain client funds in trust account held to justify public censure and one-year probation with conditions); *State ex rel. Okl. Bar Ass'n v. Gasaway,* Okl., 810 P.2d 826, 832 (1991) (commingling client's funds and using them for purposes other than those authorized and failing to make a full and fair disclosure to the Bar concerning the grievance sanctioned by a one-year suspension).

5. The terms of DR 9–102(B)(3), Code of Professional Responsibility, 5 O.S.Supp.1983, Ch. 1, App. 3, are:
   "A lawyer shall:
   \* \* \* \* \* \*
   (3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them \* \* \*."
   The present post-code counterpart of DR 9–102(B)(3) is Rule 1.15(a), Rules of Professional Conduct, *supra* note 1.

6. The terms of DR 9–102(B)(4), Code of Professional Responsibility, 5 O.S.Supp.1983, Ch. 1, App. 3, are:
   "A lawyer shall:
   \* \* \* \* \* \*
   (4) Promptly pay or deliver to the client as requested by a client the funds, securities, or

## CONCESSION AS TO AVAILABLE MITIGATION

The parties submit that the events surrounding all of respondent's misconduct occurred while he was heavily abusing alcohol. Every day for a two-year period beginning August 1988 respondent attended Alcoholics Anonymous [AA] meetings. He continues to be active in that organization and is now reported to abstain from using alcohol.

## THE PARTIES' RECOMMENDATION FOR DISCIPLINE

The parties recommend that respondent (a) be suspended from the practice of law for a six-month period, (b) pay the costs incurred in this proceeding, (c) be subjected to post-reinstatement probation for a two-and-one-half-year period, and (d) be supervised by a designated member of the Lawyers Helping Lawyers Committee [7] throughout the term of his probation.

other properties in the possession of the lawyer which the client is entitled to receive.
* * * "
The present post-code counterpart of DR 9-102(B)(4) is Rule 1.15(b), Rules of Professional Conduct, *supra* note 1.

7. According to a Bar pamphlet, the Lawyers Helping Lawyers Committee was established by the Bar in 1985 to assist lawyers having difficulties that adversely affect their practice. The Committee's purpose is to develop and maintain an organization within the Bar which can respond and assist the impaired lawyer through direct contact and appropriate referral, and assure the public of competent legal representation. The Committee is prepared to deal with a lawyer's personal problems caused by alcohol and other chemical abuse, physical illness, senility, divorce, depression and stress. We take judicial notice of this widely circulated official Bar material. *State ex rel Okl. Bar Ass'n v. Donnelly*, Okl., 848 P.2d 543, 545 n. 3 (1992).

8. *State ex rel. Okl. Bar Ass'n v. Raskin*, Okl., 642 P.2d 262, 265 (1982); *Tweedy v. Okl. Bar Ass'n*, Okl., 624 P.2d 1049, 1052 (1981); *In re Integration of State Bar of Oklahoma*, 185 Okl. 505, 95 P.2d 113, 114 (1939).

9. *State ex rel. Okl. Bar Ass'n v. Lloyd*, Okl., 787 P.2d 855, 858 (1990); *Okl. Bar Ass'n v. Stubblefield*, Okl., 766 P.2d 979, 982 (1988); *State ex rel.*

## I

## THE RECORD BEFORE THE COURT IS COMPLETE FOR A *DE NOVO* CONSIDERATION OF ALL FACTS RELEVANT TO THIS PROCEEDING

The Oklahoma Supreme Court has exclusive original jurisdiction over Bar disciplinary proceedings.[8] The court's review is conducted by *de novo* consideration of the prosecution that is brought before us.[9] Neither the trial authority's findings nor its assessments with respect to the weight or credibility of the evidence can bind this court.[10] In a *de novo* consideration, in which the court exercises its constitutionally invested, nondelegable power to regulate both the practice of law and the legal practitioners,[11] a full-scale exploration of all relevant facts is mandatory.[12]

The court's task cannot be discharged unless the PRT panel submits a complete record of proceedings for a *de novo* examination of all pertinent issues.[13] Our responsibility is hence to ensure that the record is sufficient for a thorough inquiry into essential facts and for crafting

*Okl. Bar Ass'n v. Cantrell*, Okl., 734 P.2d 1292, 1293 (1987); *Raskin, supra* note 8 at 265–266. Because this court's cognizance of disciplinary proceedings cannot be shared with any other institution, every aspect of the Bar's adjudicative process must be supervised by our *de novo* consideration. This attribute of nondelegable jurisdiction serves to distinguish the conduct of bar disciplinary functions from trial *de novo* —a retrial in a different court—or even from *de novo* appellate review on the record, which stands for an independent, non-deferential examination of another tribunal's record.

10. *Raskin, supra* note 8 at 265.

11. *Raskin, supra* note 8 at 266; *Tweedy, supra* note 8 at 1052.

12. *State ex rel. Okl. Bar Ass'n v. Dugger*, Okl., 385 P.2d 486 (syllabus) (1963).

13. Rule 6.13, Oklahoma Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A. Rule 6.13 provides in part that:
"... [T]he Trial Panel shall file with the Clerk of the Supreme Court a written report which *shall contain the Trial Panel's findings of fact on all pertinent issues and conclusions of law* ..." (Emphasis added.)

the appropriate discipline[14] that would avoid the vice of visiting disparate treatment on the respondent-lawyer.[15]

■ Carpenter has admitted, and the record adequately reflects the professional misconduct alleged in Counts 1 through 5. For the enhancement of discipline, the complaint alleges in Count 6 that between 1982 and 1988 respondent received four private reprimands from the Professional Responsibility Commission.[16] Carpenter's answer denies and demands strict proof of these allegations. Because the Bar believed that respondent had an alcohol problem when the alleged past misconduct occurred, it did not press at the hearing its quest for enhancement of discipline.

Since Carpenter's return to a life of sobriety in August of 1988 he has been able to take care of his legal practice. The Bar recommends that he be given an opportunity to maintain his practice with "checks and balances in place so that the public is adequately protected." Carpenter testified that he has been in contact with two members of Lawyers Helping Lawyers and a lawyer member of AA who have been helpful in his recovery. The parties stipulated that Carpenter attended AA meetings every day for two years beginning August 1,

1988 and remains active in that organization. According to the Bar, several members of Lawyers Helping Lawyers will participate in supervising Carpenter's probation. Whenever needed, spot audits of a supervised probationer's trust accounts will be performed as part of the Committee's monitoring process.

The record is adequate for our *de novo* review of Carpenter's professional misconduct and of his alcohol-related incapacity to practice law.

**II**

**A SIX-MONTH SUSPENSION FOLLOWED BY A SUPERVISED TWO-AND-ONE-HALF-YEAR POST-REINSTATEMENT PROBATION IS AN APPROPRIATE SANCTION FOR RESPONDENT'S PAST PROFESSIONAL MISCONDUCT**

■ In a disciplinary proceeding the court's responsibility is not to punish but to inquire into the lawyer's continued fitness, with a view to safeguarding the interests of the public, of the courts and of the legal profession.[17] A lawyer's professional misconduct (Rule 6)[18] and *any personal incapacity* (Rule 10)[19] that may have impeded

**14.** A complete record is necessary for review of a bar disciplinary proceeding. The material to be reviewed is never to be deemed settled beyond our ability to expand it. The record always remains within this court's plenary power to order its supplementation. *State ex rel. Okl. Bar Ass'n v. Moss,* Okl., 794 P.2d 403, 404 (1990); *State ex rel. Okl. Bar Ass'n v. Samara,* Okl., 683 P.2d 979, 983 (1984); *State ex rel. Okl. Bar Ass'n v. Warzyn,* Okl., 624 P.2d 1068, 1071 (1981). *See State ex rel. Okl. Bar Ass'n v. Armstrong,* Okl., 791 P.2d 815, 816 (1990), which teaches that an interim suspension of an attorney cannot be made on an incomplete record. The same problem confronted this court in *State ex rel. Okl. Bar Ass'n v. Lloyd,* SCBD No. 3455, received November 17, 1987 [*Lloyd I*]. There, we declined to accept the trial panel's recommendation and returned the case for a full evidentiary hearing before the panel whence it came. For an explanation, see *State ex rel. Okl. Bar Ass'n v. Lloyd, supra* note 9 at 856 [*Lloyd II*].

**15.** *State ex rel. Okl. Bar Ass'n v. Perceful,* Okl., 796 P.2d 627, 630 (1990).

**16.** The complaint alleges that the reprimands were for neglect (3 counts) and misrepresentation/fraud (1 count).

**17.** *Donnelly, supra* note 7 at 546; *State ex rel. Okl. Bar Ass'n v. Colston,* Okl., 777 P.2d 920, 925 (1989); *State ex rel. Okl. Bar Ass'n v. Moss,* Okl., 682 P.2d 205, 207 (1983); *State ex rel. Okl. Bar Ass'n v. Harlton,* Okl., 669 P.2d 774, 777 (1983); *Raskin, supra* note 8 at 267.

**18.** Rule 6 (Formal Proceedings Before Supreme Court and Professional Responsibility Tribunal), Rules Governing Disciplinary Proceedings, 5 O.S.1981, Ch. 1, App. 1–A. A Rule 6 proceeding focuses on the lawyer's *past professional misconduct.*

**19.** A lawyer's *present incapacity to practice* is the exclusive focus of a Rule 10 proceeding. Rule 10 (Suspension For Personal Incapacity To Practice Law), Rules Governing Disciplinary Proceedings, 5 O.S.1981, Ch. 1, App. 1–A. A Rule 10 proceeding focuses exclusively on the practitioner's *present condition* and its *future consequences.* Under this rule a lawyer may be

a practitioner in performing at a minimum acceptable level are of equal importance in exploring solutions that accord with the law's imperative of ensuring protection of the public from substandard lawyers.[20] The complaint against Carpenter was pressed as a Rule 6 proceeding, which focuses on the lawyer's *offending past conduct*.[21] It is appropriate to take into account Carpenter's alcohol abuse, both as a *potentially incapacitating agent* in the Rule 10 sense and as a *mitigating factor* in fashioning a suitable Rule 6 discipline.[22]

■ A lawyer who has dealt *grave financial* harm to a client falls within a class of most serious offenders.[23] Whenever lawyer-generated economic injury befalls a client—a conduct that is reprehensible—imposition of harsh measures is called for. Our review of the record in this case reveals that respondent's professional misconduct visited *no* detriment upon his clients.[24] Carpenter is charged with making non-interest-bearing loans to his clients, commingling their funds, failing to keep a proper account of those funds and failing promptly to return them to his client. While the circumstances surrounding Carpenter's offenses might not be perceived as overly grievous, his actions nonetheless call for imposition of professional discipline.[25] Although alcoholism is not in itself enough to mitigate discipline, the fact that Carpenter recognized his problem, sought and cooperated in treatment, and is now willing to

undergo supervision, convinces us that severe discipline need not be imposed.

■ The PRT's recommendation that Carpenter be suspended from the practice of law for a six-month period followed by supervised probation for two-and-one-half years is approved. Carpenter *must* (a) sign a "contract" with the Lawyers Helping Lawyers Committee, (b) be supervised by a designated member of the Committee throughout the term of his probation, as well as participate for that length of time in the Alcoholics Anonymous program or in some other recognized organization in conformity to his agreement with the Lawyers–Helping–Lawyers program, (c) report his attendance and status to the designated member-sponsor of the Lawyers–Helping–Lawyers group, and (d) cooperate with the General Counsel of the Bar in any investigation of an alleged unprofessional conduct which has or may come to the Bar's attention. If he fails to comply with the terms of his probation, his Lawyers–Helping–Lawyers sponsor shall be required to report immediately to the General Counsel any violations with a view to pressing for additional disciplinary measures. *Within six months of the date of this order Carpenter shall pay costs incurred in this proceeding—$8,523.40.*

Respondent stands suspended from the practice of law for six months from the day this opinion becomes final; he shall be subject to supervision for two-and-one-half

---

considered incapable of practising law as a result of habitual use of alcohol. Rule 10.1(c). The court will suspend the license of a lawyer found to be personally incapable of practicing law. Rule 10.2. In the Rule 10 process the *main thrust is on prophylactic measures* —those that would minimize *future* risk to the public from a practitioner's *present* incapacity. *Donnelly, supra* note 7 at 547.

**20.** *Donnelly, supra* note 7 at 547–548.

**21.** This approach, which is necessary to safeguard public interest and to protect the judicial system, also is designed to deter the respondent from further offending behavior and other members of the Bar from like derelictions. *State ex rel. Okl. Bar Ass'n v. Arnett*, Okl., 815 P.2d 170, 171 (1991); *State ex rel. Okl. Bar Ass'n v. Denton*, Okl., 598 P.2d 663, 665 (1979).

**22.** A lawyer's *incapacity to practice* may be considered in a Rule 6 proceeding. *Donnelly, supra* note 7 at 547–548.

**23.** *Raskin, supra* note 8 at 267.

**24.** Commingling of client funds is a serious breach of a lawyer's duty. This misconduct could have resulted in serious economic harm. Fortunately Carpenter transferred all client funds from his operating account into a trust account *before* the funds were expended or depleted.

**25.** The classification regime dividing offenders into serious and non-serious groups *should not be interpreted to mean that a minor offense is insignificant.* Misconduct generally erodes the confidence and trust of the public in the legal profession. *Raskin, supra* note 8 at 267.

years following his reinstatement; costs must be paid in full before his reinstatement.

LAVENDER, V.C.J., and SIMMS, HARGRAVE, ALMA WILSON and WATT, JJ., concur.

HODGES, C.J., and KAUGER and SUMMERS, JJ., concur in part and dissent in part.

KAUGER, Justice, concurring in part, dissenting in part:

I agree that the respondent, Bob Carpenter (Carpenter/attorney), engaged in conduct warranting discipline. It is uncontested that he: 1) commingled the funds of two clients with his own in violation of DR 9–102(A);[1] 2) failed to keep a proper account of his client's funds in violation of DR 9–102(B)(3);[2] and 3) failed to deliver promptly the funds of a client in violation of DR 9–102(B)(4).[3] It is also uncontested that no client suffered economic detriment because of the attorney's professional misconduct.

There is also no assertion that the loans made by Carpenter bore any interest or that they were made for other than humanitarian reasons. Because attorneys committing similar infractions have been disciplined in the form of either a public or a private reprimand, I dissent. I also dissent to the Court's finding that the making of loans to clients, under circumstances in which no interest was taken in the litigation, is conduct warranting discipline.

Before discipline is imposed upon an attorney, the charges must be established by clear and convincing evidence.[4] In a bar disciplinary proceeding, we are not bound by the parties' stipulations or the findings of the professional responsibility tribunal insofar as the imposition of discipline is concerned. The nondelegable, constitutional responsibility to regulate the practice, the ethics, the licensure, and the discipline of the practitioners of the law is vested solely in this Court.[5] Our review therefore is de novo in considering the record presented as well as the trial panel's disciplin-

1. The questioned conduct occurred while the Code of Professional Responsibility was in effect. DR 9–102(A), 5 O.S.Supp.1983, Ch. 1, App. 3 provides:

"All Funds of Clients paid to a lawyer or law firm, excluding advances for costs and expenses, shall be deposited in one or more identifiable bank or savings and loan association accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
(1) Funds reasonably sufficient to pay bank charges may be deposited therein.
(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved."
The present Code of Professional Responsibility counterpart to DR 9–102(A) is Rule 1.15(a), 5 O.S.1991, Ch. 1, App. 3–A.

2. DR 9–102(B)(3), 5 O.S.Supp.1983, Ch. 1, App. 3 provides:

"A lawyer shall:
(3) Maintain complete records of all funds, securities, and other properties of a client

coming into the possession of the lawyer and render appropriate accounts to his client regarding them."
The present Code of Professional Responsibility counterpart to DR 9–102(B)(3) is Rule 1.15(a), 5 O.S.1991, Ch. 1, App. 3–A.

3. DR 9–102(B)(4), 5 O.S.Supp.1983, Ch. 1, App. 3, provides:

"A lawyer shall:
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."
The present Code of Professional Responsibility counterpart to DR 9–102(B)(4) is Rule 1.15(b), 5 O.S.1991, Ch. 1, App. 3–A.

4. Rule 6.12, 5 O.S.1991, Ch. 1, App. 1–A provides in pertinent part:

"... To warrant a finding against the respondent in a contested case, the charge or charges must be established by clear and convincing evidence ..."
State ex rel. Oklahoma Bar Ass'n v. Gasaway, 810 P.2d 826, 830 (Okla.1991); State ex rel. Oklahoma Bar Ass'n v. Braswell, 663 P.2d 1228, 1232 (Okla.1983).

5. State ex rel. Oklahoma Bar Ass'n v. Downing, 804 P.2d 1120, 1122 (Okla.1991); State ex rel. Oklahoma Bar Ass'n v. Raskin, 642 P.2d 262,

ary recommendations.[6] When determining the appropriate discipline for attorney misconduct, we compare the circumstances with those of previous disciplinary proceedings and examine the attorney's previous record of professional behavior. We must also determine how best to serve the welfare of the public and to preserve the integrity of the bar.[7]

The most recent case involving similar circumstances to be presented to this tribunal involved Attorney "X".[8] Attorney "X" took a total of $1,075.00 from clients for defense of a quiet title action. Service was never made on behalf of Attorney "X's" clients, and the cause was not pursued. Several efforts at locating Attorney "X" were unsuccessful. When his clients finally found him, he told them, on more than one occasion, that he would refund the retainer and costs. The clients did not receive all their funds until after discipline was imposed by this tribunal. Attorney "X" was given a private reprimand, required to return fees to his clients, and the costs of the action were imposed. Here, Carpenter commingled his personal funds with his clients and was dilatory on one occassion in returning client monies. **However, no detriment was suffered by the clients—all the monies have been accounted for.** Additionally, Carpenter realized he had a problem with alcohol misuse long before the complaint was filed in the instant cause. Any lack of diligence related to his alcoholism has been corrected through his own effort at sobriety. Suspension is not warranted. The appropriate discipline in the instant cause is private censure coupled with the imposition of costs and continued association with the Lawyers Helping Lawyers Committee.[9]

Overreaching for pecuniary gain by an attorney should be vigorously investigated and discipline imposed if warranted. However, the provision of humanitarian, non-interest bearing loans to clients does not warrant discipline.[10] Rule 1.8(e),[11] of the Oklahoma Rules of Professional Conduct, prohibiting such loans, violates both the Oklahoma and the United States Constitutions.[12] When I first called for the re-examination of Rule 1.8(e) and the adoption of a rule similar to § 48 to the Restatement

265–66 (Okla.1982); *Tweedy v. Oklahoma Bar Ass'n,* 624 P.2d 1049, 1052 (Okla.1981).

**6.** *State ex rel. Oklahoma Bar Ass'n v. Gasaway,* see note 4 at 831, supra; *State ex rel. Oklahoma Bar Ass'n v. Stubblefield,* 766 P.2d 979, 982 (Okla.1988).

**7.** *State ex rel. Oklahoma Bar Ass'n v. Downing,* see note 5, supra.

**8.** OBAD #2057, SCBD 3823. The attorney's name is not revealed because the only discipline imposed is a private reprimand and a return of client funds.

**9.** In another recent case, *State ex rel. Oklahoma Bar Ass'n v. Evans,* 64 O.B.J. 1494 (May 11, 1993), the attorney was given a public reprimand for commingling personal funds with his clients and putting client funds in jeopardy in a garnishment. Although Carpenter's trust account fell below the amount finally determined to be owing to one client, no client was financially injured. *Evans* would support the imposition of only a public reprimand.

**10.** *State ex rel. Oklahoma Bar Ass'n v. Smolen,* 837 P.2d 894 (Okla.1992) (Kauger, J., dissenting). The only difference between courting clients with receptions and dinner parties and helping a destitute client through a non-interest bearing loan is one of compassion—in either instance the attorney is feeding the client.

**11.** Rule 1.8(e), Oklahoma Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A provides:

"While representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to a client, except that a lawyer may advance or guarantee the expenses of litigation, including court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence, provided the client remains ultimately liable for such expenses."

When this rule was adopted by the Court in 1988, I dissented from this portion of the proposed rules.

**12.** Rule 1.8(e), see note 11, supra, potentially violates several sections of both the United States Constitution and the Oklahoma Constitution—the equal protection clause, United States Const. amend. XIV, § 1; access to courts, Okla. Const art. 2, § 6; the special law clause, Okla. Const. art. 5, 46, the privileges and immunities clause, Okla. Const. art. 5, § 51; the First Amendment of the United States Constitution;

(Third) Governing Lawyers [13] in my dissent to *State ex rel. Oklahoma Bar Ass'n v. Smolen,* 837 P.2d 894 (Okla.1992), I was joined by two of my colleagues—one of whom is the author of the majority opinion.[14]

I could not countenance the imposition of discipline based upon an unconstitutional rule in *Smolen;* I cannot do so today. I would subject Carpenter to a private reprimand, recommend a continued association with the Lawyers Helping Lawyers Committee, and impose costs. This disciplinary action is warranted solely by his mishandling of client funds.

the Okla. Const. art. 1, § 2; and the Okla. Const. art. 2, § 15.

**13.** The Restatement (Third) Governing Lawyers, tentative draft no 4, § 48 (April 10, 1991) provides in pertinent part:
"§ 48. Forbidden Client–Lawyer Financial Arrangements
(1) A lawyer may not acquire a proprietary interest in the cause of action or subject matter of litigation that the lawyer is conducting for a client, except that the lawyer may:
(a) Acquire a lien as provided by § 55 to secure the lawyer's fee or expenses; and
(b) Contract with a client for a contingent fee in a civil case except when prohibited as stated in § 47.
(2) A lawyer may not make or guarantee a loan to a client in connection with pending or contemplated litigation that the lawyer is conducting for the client, except that the lawyer may:
(a) Advance or guarantee a loan covering court costs and expenses of litigation, the repayment of which to the lawyer may be contingent on the outcome of the matter; and
(b) Make or guarantee a loan on fair terms, the repayment of which to the lawyer may be contingent on the outcome of the matter, if the loan is needed to enable the client to withstand delay in litigation that otherwise might unjustly induce the client to settle or dismiss a case because of financial hardship rather than on the merits...."
It is worth noting that both Louisiana and California have adopted positions which allow advances to clients for living expenses. See, *Louisiana State Bar Ass'n v. Edwins,* 329 So.2d 437, 445 (La.1976) and Rule 5–104 of the California Rules of Professional Conduct.

**14.** *State ex rel. Oklahoma Bar Ass'n v. Smolen,* see note 10 at 901, 906. Justice Opala wrote:
*"I would, as the dissent urges, favor a reexamination of Rule 1.18(e)* in light of the quoted tentative draft of Restatement (Third)...." (Emphasis Justice Opala's.)