2001 OK 96

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Cordes Martin GIGER, Respondent.**

No. SCBD–4529.

Supreme Court of Oklahoma.

Nov. 13, 2001.

As Corrected Nov. 19, 2001.

858

Mike Speegle, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for Complainant.

Albert J. Hoch, Jr., Oklahoma City, OK, for Respondent.

OPALA, J.

¶ 1 In this disciplinary proceeding against a lawyer, the issues to be decided are: (1) Does the record submitted for our examination provide sufficient evidence for a mean- ingful *de novo* consideration of the complaint and of its disposition? [1] and (2) Is a suspension from the practice of law for one year with a two-year conditioned supervision (the latter to run concurrently from the effective date of the suspension's beginning) an appropriate disciplinary sanction for respondent's breach of professional ethics? We answer both questions in the affirmative.

## I

### INTRODUCTION TO THE RECORD

¶ 2 On 28 March 2000, the Oklahoma Bar Association (the Bar) commenced this disciplinary proceeding against Cordes Martin Giger (respondent), a licensed lawyer, by filing a formal complaint in accordance with the provisions of Rule 6 of the Rules Governing Disciplinary Proceedings ("RGDP").[2] The complaint alleged in three counts multiple violations of the RGDP and of the Oklahoma Rules of Professional Conduct ("ORPC"). An amended complaint containing a fourth count was filed by the Bar on 6 September 2000.

¶ 3 On 27 September 2000, a trial panel of the Professional Responsibility Tribunal held a hearing to consider the charges. At the commencement of the hearing, the trial panel admitted into evidence a document containing the parties' stipulations of fact, conclusions of law, and an agreed disciplinary recommendation. Respondent admitted by stipulation that his conduct violated RGDP Rules 1.3 [3] and 5.2 [4] and ORPC

1. The record consists of the parties' stipulations, a transcript of the hearing held before the trial panel of the Professional Responsibility Tribunal, exhibits offered by both parties, which were admitted into evidence at that hearing, and the trial panel's report.

2. The provisions of RGDP Rule 6.1, 5 O.S.1991, Ch.1, App. 1–A, state:

"The proceeding shall be initiated by a formal complaint prepared by the General Counsel, approved by the Commission, signed by the chairman or vice-chairman of the Commission, and filed with the Chief Justice of the Supreme Court."

3. The provisions of RGDP Rule 1.3, 5 O.S.1991, Ch.1, App. 1–A, state:

"The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline."

4. The provisions of RGDP Rule 5.2, 5 O.S.1991, Ch. 1, App. 1–A, state in pertinent part that after the General Counsel files and serves a grievance upon a lawyer, the lawyer

"shall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent

Rules 1.1,[5] 1.2,[6] 1.3,[7] 1.4,[8] 1.15,[9] 8.4(b) [10] and 8.4(d).[11] With respect to mitigation, the parties agreed that respondent's completion of a substance-abuse assessment and the modification of his prescription medications were factors to be considered. They recommended that respondent receive a ninety (90) day suspension from the practice of law followed by a period of supervision.

lawyer's alleged misconduct unless the respondent's refusal to do so is predicated upon expressed constitutional grounds....The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline. The General Counsel shall make such further investigation of the grievance and response as the General Counsel may deem appropriate before taking any action."

5. The provisions of ORPC Rule 1.1, 5 O.S.1991, Ch.1, App. 3–A, state:

"A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."

6. The provisions of ORPC Rule 1.2, 5 O.S.1991, Ch.1, App. 3–A, state:

"(a) A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (b), (c), and (d) and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.
(b) A lawyer may limit the objectives of the representation if the client consents after consultation.
(c) A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.
(d) When a lawyer knows that a client expects assistance not permitted by the Rules of Professional Conduct or other law, the lawyer shall consult with the client regarding the relevant limitations on the lawyer's conduct."

7. The provisions of ORPC Rule 1.3, 5 O.S.1991, Ch.1, App. 3–A, state:

"A lawyer shall act with reasonable diligence and promptness in representing a client."

¶ 4 Upon completion of the hearing and consideration of the stipulations and testimony on file, the trial panel issued a report that incorporated the parties' stipulations. The panel also described with greater specificity respondent's illnesses and the problems he experienced with prescription medications, and recognized for purposes of mitigation his acceptance of responsibility for his professional misconduct and his otherwise unblem-

8. The provisions of ORPC Rule 1.4, 5 O.S.1991, Ch.1, App. 3–A, state:

"(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information. (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

9. The provisions of ORPC Rule 1.15, 5 O.S.1991, Ch.1, App. 3–A, state in pertinent part:

"(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the written consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.
(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property...."

10. The provisions of ORPC Rule 8.4(b), 5 O.S. 1991, Ch.1, App. 3–A, state:

"It is professional misconduct for a lawyer to:
...
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; ..."

11. The provisions of ORPC Rule 8.4(d), 5 O.S. 1991, Ch.1, App. 3–A, state:

"It is professional misconduct for a lawyer to:
...
(d) engage in conduct that is prejudicial to the administration of justice; ..."

ished bar disciplinary record. The panel recommended that respondent be suspended from the practice of law for ninety (90) days and that he submit to periodic substance-abuse testing under the supervision of the Lawyers Helping Lawyers Committee.[12]

## II

## THE RECORD BEFORE THE COURT PROVIDES SUFFICIENT EVIDENCE FOR A MEANINGFUL *DE NOVO* CONSIDERATION OF ALL FACTS RELEVANT TO THIS PROCEEDING

■■■■ ¶ 5 In a bar disciplinary proceeding the court functions as an adjudicative licensing authority that exercises exclusive original cognizance.[13] Its jurisdiction rests on the court's constitutionally vested, nondelegable power to regulate the practice of law, including the licensure, ethics, and discipline of this state's legal practitioners.[14] In deciding whether discipline is warranted and what sanction, if any, is to be imposed for the misconduct charged, the court conducts a full-scale, nondeferential, *de novo* examination of all relevant facts,[15] in which the conclusions and recommendations of the trial panel are neither binding nor persuasive.[16] In this undertaking we are not restricted by the scope-of-review rules that govern corrective relief on appeal or certiorari, proceedings in which another tribunal's findings of fact may have to be left undisturbed by adherence to the law-imposed standards of deference.[17]

■■■■ ¶ 6 The court's duty can be discharged only if the trial panel submits to us a complete record of the proceedings.[18] Our initial task is to ascertain whether the ten-

12. The Bar's Lawyers Helping Lawyers Committee is a program designed to (a) assist, through direct contact, lawyers impaired by substance abuse, depression, stress and other practice-related malaise and (b) assure the public of competent legal representation. *See State ex rel. Okl. Bar Ass'n v. Wolfe*, 1996 OK 75, ¶ 14, 919 P.2d 427, 438 (Opala, J., dissenting from discipline imposed).

13. *State ex rel. Okl. Bar Ass'n v. Leigh*, 1996 OK 37, ¶ 11, 914 P.2d 661, 666; *State ex rel. Okl. Bar Ass'n v. Eakin*, 1995 OK 106, ¶ 8, 914 P.2d 644, 647; *State ex rel. Okl. Bar Ass'n v. Bolton*, 1994 OK 53, ¶ 15, 880 P.2d 339, 344; *State ex rel. Okl. Bar Ass'n v. Donnelly*, 1992 OK 164, ¶ 11, 848 P.2d 543, 545; *State ex rel. Okl. Bar Ass'n v. Raskin*, 1982 OK 39, ¶ 11, 642 P.2d 262, 265; *In re Integration of State Bar of Oklahoma*, 1939 OK 378, 95 P.2d 113, 115.

14. *Eakin, supra* note 13 at ¶ 8, at 648; *State ex rel. Okl. Bar Ass'n v. Downing*, 1990 OK 102, ¶ 12, 804 P.2d 1120, 1122–1123; *Raskin, supra* note 13 at ¶ 11, at 265–266.

15. *Leigh, supra* note 13; *Eakin, supra* note 13 at ¶ 8, at 647–648; *State ex rel. Okl. Bar Ass'n v. Lloyd*, 1990 OK 14, ¶ 8, 787 P.2d 855, 858; *State ex rel. Okl. Bar Ass'n v. Stubblefield*, 1988 OK 141, ¶ 7, 766 P.2d 979, 982; *State ex rel. Okl. Bar Ass'n v. Cantrell*, 1987 OK 17, ¶ 1, 734 P.2d 1292, 1293; *State ex rel. Okl. Bar Ass'n v. Brandon*, 1969 OK 28, ¶ 5, 450 P.2d 824, 827. Because this court's cognizance of disciplinary proceedings cannot be shared with any other institution, every aspect of the Bar's adjudicative process must be revisited by our *de novo* consideration.

The attribute of nondelegable jurisdiction serves to distinguish the conduct of bar disciplinary functions from trial *de novo*—a retrial in a different court—or even from *de novo* appellate review on the record, which stands for an independent, non-deferential examination *of another tribunal's record.*

16. *Eakin, supra* note 13 at ¶ 8, at 648; *Raskin, supra* note 13 at ¶ 11, at 265. The court's range of options in a disciplinary proceeding is set forth in RGDP Rule 6.15(a), 5 O.S.1991, Ch. 1, App. 1–A, which states in pertinent part:

"The Supreme Court may approve the Trial Panel's findings of fact or make its own independent findings, impose discipline, dismiss the proceedings or take such other action as it deems appropriate."

17. *Bolton, supra* note 13 at ¶ 15, at 344; *Eakin, supra* note 13 at ¶ 8, at 648; *State ex rel. Okl. Bar Ass'n v. Farrant*, 1994 OK 13, ¶ 7, 867 P.2d 1279, 1284; *Levi v. Mississippi State Bar*, 436 So.2d 781, 782 (Miss.1983).

18. The provisions of RGDP Rule 6.13, 5 O.S. 1991, Ch. 1, App.1–A, state in pertinent part:

"Within thirty (30) days after the conclusion of the hearing, the Trial Panel shall file with the Clerk of the Supreme Court a written report which shall contain the Trial Panel's findings of fact on all pertinent issues and conclusions of law (including a recommendation as to discipline, if such is found to be indicated, and a recommendation as to whether the costs of the investigation, record and proceedings should be imposed on the respondent), and shall be accom-

dered record is sufficient to permit (a) an independent determination of the facts and (b) the crafting of an appropriate discipline. The latter is that which (1) is consistent with the discipline imposed upon other lawyers who have committed similar acts of professional misconduct and (2) avoids the vice of visiting disparate treatment on the offending lawyer.[19]

¶ 7 Having carefully scrutinized the record submitted to us in this proceeding, we conclude that it is adequate for *de novo* consideration of respondent's alleged professional misconduct.

## III

## FACTS ADMITTED BY STIPULATION

■■ ¶ 8 The parties have tendered their stipulations in which respondent admits the facts which serve as the basis of the charges against him. A stipulation of fact is an agreement between the parties that establishes a particular fact or facts in controversy. It serves as an evidentiary substitute dispensing with the need for legal proof of the agreed fact or facts. · Stipulations are subject to the approval of the court in which they are entered.[20] We find from the record that respondent's factual stipulations have been made voluntarily and with knowledge of their meaning and legal effect. We further find that they are not inconsistent with any facts otherwise established by the record. *We hence approve and adopt the parties' tendered stipulations of fact.*

panied by all pleadings, a transcript of the proceeding, and all exhibits offered thereat. . . ."

19. *Eakin, supra* note 13 at ¶ 9, at 648; *Bolton, supra* note 13 at ¶ 16, at 345; *State ex rel. Okl. Bar Ass'n v. Perceful*, 1990 OK 72, ¶ 5, 796 P.2d 627, 630.

20. *State ex rel. Okl. Bar Ass'n. v. Livshee*, 1994 OK 12, ¶ 7, 870 P.2d 770, 774.

21. For the provisions of this rule, *see supra* note 4.

22. The record also contains a transcript of the first day of a preliminary hearing for Carla Pierce held on 3 September 1999. That transcript also shows respondent arriving late (by

## A.
### Counts One and Two–Failure to Respond to the Bar

¶ 9 Respondent admits the allegations in Counts One and Two of the complaint that he failed to respond to the investigative inquiries of the Bar in relation to two grievances, including requests for information sent by the Bar after the grievances had been opened for formal investigation. We accept respondent's stipulation—and find by clear and convincing evidence—that this conduct violated RGDP Rule 5.2.[21]

## B.
### Count Two–The Carla Pierce Grievance

¶ 10 Respondent was retained by Carla Pierce to defend her against criminal charges filed in the District Court of Cleveland County. Respondent admits that on 25 June 1999 he arrived late for Pierce's preliminary hearing, asked only a limited number of questions, exhibited slurred speech, and appeared to be under the influence of some unknown substance.[22] He stipulates that his representation at that hearing was so poor that the District Attorney later agreed to provide the accused with a second preliminary hearing. Respondent stipulates that his conduct in handling Carla Pierce's defense violated RGDP Rule 1.3 and ORPC Rules 1.1, 1.3, and 1.4.[23] We accept respondent's stipulation—and find by clear and convincing evidence—that his conduct violated the provisions of RGDP Rule 1.3 and ORPC Rule 1.1 and 1.3. Neither the stipulations nor the testimony and exhibits on file provide clear and convincing evidence that respondent violated ORPC Rule 1.4.[24] Respondent stands exonerated of that violation.

over an hour) and participating in the hearing only minimally. It would hence appear from the record that respondent's substandard representation of Ms. Pierce may have involved conduct beyond that occurring at the 25 June 1999 hearing to which respondent has stipulated. Because respondent was not charged with misconduct at the 3 September preliminary hearing, we have not considered its occurrence as a basis for the imposition of today's sanction.

23. For the provisions of these rules, *see* notes 3, 5, 7, and 8, respectively.

24. Ms. Pierce stated in her grievance letter that she had great difficulty contacting respondent, but her testimony on this issue was not elicited.

## C.

### Count Three–Vehicular Drug–Related Arrests

¶ 11 Respondent admits that he entered a plea of guilty or of no contest to the following six criminal charges involving drug use and possession:

(1) Actual physical control while under the influence of drugs,[25] possession of marijuana and possession of drug paraphernalia, Cleveland County, 12 June 1998: a one-year deferred sentence on each count;

(2) Driving under the influence of drugs, Cleveland County, 30 October 1998: a one-year deferred sentence;

(3) Actual physical control while under the influence of drugs, Cleveland County, 13 February 1999: a one-year deferred sentence;

(4) Driving under the influence of drugs, McIntosh County, 2 May 1999: a two-year deferred sentence;

(5) Driving under the influence of drugs, Pittsburg County, 27 June 1999: a one year suspended sentence;

(6) Driving under the influence of drugs, Cleveland County, 4 October 1999: a one-year deferred sentence.

Respondent stipulates that the conduct evidenced by these criminal charges violates the provisions of RGDP Rule 1.3 and ORPC Rules 8.4(b) and 8.4(d).[26] We accept respondent's stipulation—and find by clear and convincing evidence—that respondent's conduct violated the provisions of RGDP Rule 1.3 and ORPC Rule 8.4(b). Neither the stipulations nor the testimony or exhibits on file provide clear and convincing evidence that respondent's conduct violated ORPC Rule 8.4(d).

That rule, properly understood, sanctions conduct that interferes with the administration of "judicial process." It covers only severe interference with judicial proceedings or conduct of such a severe nature that it harms our system of representative litigation as a whole.[27] While respondent's drug-related misconduct was potentially dangerous both to himself and to others, it did not interfere with any judicial proceeding or harm our legal system as a whole. Respondent stands exonerated of that violation.

## D.

### Count Four–The Linda Slavings Grievance

¶ 12 Respondent was retained by Linda Slavings to represent her in a workers compensation case. They agreed that respondent would receive checks on Slavings' behalf from the State Insurance Fund, deposit them, and then disperse the funds to Slavings. Respondent admits that he deposited some of the checks into a non-trust account. Although respondent ultimately delivered to Slavings all funds to which she was entitled, Slavings had to contact him at least once to cover a check returned for insufficient funds.

¶ 13 Respondent also admits that he was engaged by Slavings to represent her in a federal civil rights action. He concedes that he filed the lawsuit out of time and failed timely to serve the defendants. The record also shows that respondent failed to respond to a motion to dismiss Slavings' suit. Respondent stipulates that as a result of his neglect, Slavings' claim is time-barred. Respondent stipulates that his misconduct violated ORPC Rules 1.1, 1.2, 1.3, and 1.15.[28] We accept respondent's stipulation—and find by clear and convincing evidence—that respondent's conduct violated ORPC Rules 1.1,

---

This leaves respondent's deposition testimony in which he stated that he often communicated with Ms. Pierce as the only admissible evidence regarding the communication issue. A violation of professional ethics must be proved by admissible evidence. Ms. Pierce's grievance letter does not qualify.

**25.** Respondent was originally charged with actual physical control while under the influence of alcohol, but his blood alcohol test proved negative. He ultimately pled no contest to actual physical control while under the influence of drugs.

**26.** For the provisions of these rules, *see* notes 3, 10, and 11, respectively.

**27.** *State ex rel. Okl. Bar Ass'n v. Bourne,* 1994 OK 78, ¶¶ 8–9, 880 P.2d 360, 362–363; *State ex rel. Okl. Bar Ass'n v. Minter,* 2001 OK 69, ¶ 24, n. 55, 37 P.3d 763, 774, n. 55 (*reh'g denied*).

**28.** For the provisions of these rules, *see* notes 5, 6, 7, and 9, respectively.

1.3, and 1.15, but find the evidence insufficient to establish a violation of ORPC Rule 1.2. Respondent accordingly stands exonerated of that charge.

## IV

## FACTORS TO BE CONSIDERED IN MITIGATION OF THE DISCIPLINE TO BE IMPOSED

¶ 14 Mitigating circumstances may be considered in assessing the appropriate quantum of discipline.[29] The record clearly shows that respondent suffers from certain medical conditions for which he was taking a number of prescription medications, including narcotics and tranquilizers. Some of respondent's misconduct is directly related to his use of these medications. He was arrested six times between June 1998 and October 1999 and charged with eight drug-related misdemeanor counts, all but two of which were for the use or control of a vehicle while under the influence of (prescription) drugs. Respondent testified that he was taking these prescription drugs according to his doctor's instructions. No evidence to the contrary appears in the record.

¶ 15 The record provides only a tenuous connection between respondent's other ethical lapses and his prescription drug problem or fails to show any relationship at all. In the latter category is respondent's possession of marijuana and drug paraphernalia, which respondent admitted was unrelated to his medical problems, and his substandard representation of Linda Slavings, which occurred over a year before respondent's prescription drug problem—as evidenced by his arrests—began.[30] Moreover, while some of respondent's other ethical violations occurred during the same period of time as his drug-related arrests, the record fails to demonstrate a causal relationship between respondent's prescription drug problem and those other ethical lapses.[31]

¶ 16 Neither the fact that a lawyer suffers from a debilitating illness nor the side effects of medication prevents the imposition of discipline or mitigates its severity where professional standards are breached.[32] Rather, it is a lawyer's recognition that an illness (or its treatment) is having (or has had) an adverse effect on the discharge of that lawyer's professional responsibilities, together with his (or her) cooperation in modulating medical treatment, that merits consideration as mitigation.[33] The record reflects that respondent belatedly came to recognize the negative side effects of his medication and has since cooperated with his physician to adjust the dosages. Further, respondent has undergone a substance abuse assessment, has agreed to a year's participation in Lawyers Helping Lawyers, and has agreed to submit to periodic substance-abuse testing. We have taken these measures into account in assessing an appropriate discipline.

¶ 17 We also note that respondent has no prior bar disciplinary record and has expressed acceptance of responsibility for his disciplinary problems.

## V

## RESPONDENT'S MISCONDUCT WARRANTS A SUSPENSION OF HIS LICENSE TO PRACTICE LAW FOR ONE YEAR TOGETHER WITH TWO YEARS OF CONDITIONED SUPERVISION AND THE PAYMENT OF THE COSTS OF THIS PROCEEDING

¶ 18 A license to practice law is not conferred for the benefit of the licensee,

**29.** *State ex rel. Okl. Bar Ass'n v. Taylor*, 2000 OK 35, ¶ 33, 4 P.3d 1242, 1255; *State ex rel. Okl. Bar Ass'n v. Carpenter*, 1993 OK 86, ¶ 17, 863 P.2d 1123, 1130.

**30.** The record provides no evidence that respondent had a problem with prescription drugs prior to the time that his arrests took place.

**31.** There must be a causal relationship between a medical condition and the professional misconduct charged when the condition is tendered as a mitigating factor. *See State ex rel. Okl. Bar. Ass'n v. Donnelly*, 1992 OK 164, ¶ 17, n. 21, 848 P.2d 543, 548, n. 21 ("When alcoholism is tendered as a mitigating factor there must be some causal relationship between one's alcoholic affliction and the professional misconduct charged.").

**32.** *State ex rel. Okl. Bar Ass'n v. Doris*, 1999 OK 94, ¶ 39, 991 P.2d 1015, 1025.

**33.** *Carpenter, supra* note 29 at ¶ 17, at 1130.

but for that of the public. The disciplinary process, including the imposition of a disciplinary sanction, is designed not to punish the delinquent lawyer, but to safeguard the interest of the public, the judiciary, and the legal profession.[34] Disciplinary sanctions serve not only to deter the offending lawyer from committing similar acts in the future, but also operate to put others on notice that departures from ethical norms will not be tolerated.[35] The disciplinary measure imposed upon an offending lawyer should be consistent with the discipline imposed upon other lawyers for similar acts of professional misconduct.[36]

¶ 19 The parties stipulated and the trial panel recommended that respondent be suspended from the practice of law for ninety (90) days. Respondent also agreed to submit for a period of one year to substance-abuse testing and to become involved with the Lawyers Helping Lawyers Committee. Were all of respondent's misconduct iatrogenic, we would be inclined to accept the trial panel's recommendation as sufficient to vindicate the interests we are bound to protect. For the reasons to be stated below, we reject the recommendation and impose instead a suspension from the practice of law for a period of one year together with a two-year period of conditioned supervision, both to begin on the day this opinion becomes final, and the payment of the costs of this proceeding.

¶ 20 Today's assessment of a more severe discipline than that which was recommended stems in part from our concern with this respondent's sluggish reaction to the warning signs of substance abuse. The substance-abuse problem that brought respondent before us today clearly interfered with his ability properly to discharge the responsibilities of a legal practitioner. Yet the record contains no evidence that respondent took any action to address his problem until *six* crimi-

nal cases were pending against him in three different Oklahoma counties. At no time within the *sixteen months during which he was repeatedly stopped by police for drug-related vehicular crimes* did respondent demonstrate an ability to recognize his impairment or a willingness to seek help for it. His unresponsiveness to these warning signs causes us to question whether his continued licensure—without monitoring of his ongoing fitness—is in the best interest of his clients, the public, and the legal profession.

¶ 21 Adding to our sense that respondent's conduct calls for greater judicial intervention than that which has been recommended is the fact that respondent's first arrest involved not just prescription drugs, but also the possession of an illicit drug—marijuana—and drug paraphernalia. Whatever diminution of discipline might otherwise flow from the fact that respondent's larger drug problem was iatrogenic is diminished by the fact that he was dabbling at the same time in illegal drugs, conduct which indicates an indifference to legal obligation. The public must have confidence that the legal profession, which is self-regulated, will not look the other way when its members break the law. Equally important, members of the Bar must be reminded that substance abuse of any kind is incompatible with the practice of law.

¶ 22 Besides his drug-related misconduct, respondent also admitted that he ignored correspondence from the Bar regarding two grievances, including inquiries sent to him after the grievances were opened for formal investigation. In both cases, the Bar was required to issue a subpoena and take respondent's deposition in order to obtain his cooperation. He admitted commingling the funds of a client with his personal funds.[37] Finally, respondent missed dead-

34. *State ex rel. Okl. Bar Ass'n v. Smith*, 1980 OK 126, ¶ 21, 615 P.2d 1014, 1018; *State ex rel. Okl. Bar Ass'n v. Lowe*, 1982 OK 20, ¶ 19, 640 P.2d 1361, 1363.

35. *State ex rel. Okl. Bar Ass'n v. Cummings*, 1993 OK 127, ¶ 29, 863 P.2d 1164, 1174; *State ex rel. Okl. Bar Ass'n v. Hall*, 1977 OK 117, ¶ 12, 567 P.2d 975, 978.

36. *Eakin, supra* note 13 at ¶ 9, at 648; *Bolton, supra* note 13 at ¶ 16, at 345; *Perceful, supra* note 19 at ¶ 5, at 630.

37. Respondent commingled Linda Slavings' State Insurance Fund checks with his own funds in violation of the provisions of ORPC Rule 1.15, 5 O.S.1991, Ch.1, App.3–A, *supra* note 9. A lawyer's culpability for violating these requirements by mishandling funds or other property is evalu-

lines for the commencement of a lawsuit and then failed to appear at a hearing on the defendants' motion to dismiss that suit, causing his client's federal civil rights claim to become time-barred.

¶ 23 The cumulative impact of respondent's transgressions requires not only that he be suspended for more than a token period of time for his past misconduct,[38] but also that his health—physical, mental, and psychological—be regularly assessed for continued fitness to practice law. For that reason, we suspend respondent for one year and place him on two years of conditioned supervision under the auspices of a member of the Lawyers Helping Lawyers Committee. During this time, respondent shall be required to: (1) abide by the Rules of Professional Conduct, (2) cooperate with and participate in the Lawyers Helping Lawyers Committee, (3) refrain from the use or possession of any illegal drug, and (4) remain unimpaired from the use of any legal substance, whether prescribed or not, that interferes with his ability to function as a lawyer.

¶ 24 If at any time during the two-year period of conditioned supervision the General Counsel of the Oklahoma Bar Association concludes that respondent has violated any of the terms of his supervision, the Bar may file an application with the original trial panel to impose discipline for that violation. Notice of the filing of the application shall be sent to the respondent by certified mail. The trial panel shall then schedule a hearing on the application and make a determination as to whether respondent has violated the terms of his supervision. If the trial panel determines that no violation has occurred, the period of conditioned supervision shall continue. If the trial panel finds a violation did occur, then a record of the proceedings sufficient for our *de novo* review together with a recommendation for an appropriate discipline shall be forwarded to this court.

## VI

### SUMMARY

¶ 25 The record in this case provides clear and convincing evidence that respondent en-

---

ated under three standards: (1) commingling, which takes place when client money is intermixed with the attorney's personal funds; (2) simple conversion, which occurs when a lawyer applies a client's money to a purpose other than that for which it was entrusted to the attorney; and (3) misappropriation, the most serious infraction, which involves an act of conversion (or similar wrongful taking) when an attorney purposefully deprives a client of money by way of deceit and fraud. *State ex rel. Okl. Bar Ass'n v. Johnston,* 1993 OK 91, ¶ 21, 863 P.2d 1136, 1144. Complete separation of a client's money from that of the lawyer is the only way in which proper accounting can be maintained. *State ex rel. Okl. Bar Ass'n v. Taylor,* 2000 OK 35, ¶ 17, 4 P.3d 1242, 1250. The attorney has exclusive domain over the management of entrusted funds. Keeping a client's (or third party's) money separate and distinct ensures that the money is at all times properly accounted for and can be shown to be distinct. This serves to prevent a lawyer from deliberately or mistakenly using any of the entrusted funds. "In their daily work lawyers commonly come into clients' funds. The trust placed in the lawyer owes its origin to the special professional status he occupies as a licensed practitioner. Public confidence in the practitioner is essential to the proper functioning of the profession. Few breaches of ethics are as serious as the act of commingling a client's [or third party's] funds and the unwarranted use of his money." (quoting *State ex rel. Okl. Bar Ass'n v.*

*Raskin,* 1982 OK 39, ¶ 14, 642 P.2d 262, 267). *State ex rel. Okl. Bar Ass'n v. Taylor, supra* at ¶ 17, n. 26, at 1251, n. 26. Lawyers who have commingled funds without resulting harm to the client have received discipline ranging from public censure to suspension. *State ex rel. Okl. Bar Ass'n v. Stephenson,* 1990 OK 99, ¶ 19, 798 P.2d 1078, 1080 (public censure); *State ex rel. Okl. Bar Ass'n v. Geb,* 1972 OK 17, ¶ 14, 494 P.2d 299, 301–02 (twelve month suspension where lawyer had previously been disciplined).

**38.** Our conviction that respondent should be subject for some period of time to regular monitoring of his fitness to practice law is only reinforced by the limited extent to which respondent, in his brief to this court, acknowledges responsibility for his misconduct. In that document, which stands as respondent's final opportunity to convince this court of his continued fitness to practice law, respondent glosses over some of the more troubling aspects of his misconduct. He states that the "testimony before the Tribunal indicated respondent's problems were associated with prescription medication." This is true as far as it goes, but it does not go far enough by acknowledging that his problem with drugs extended—to what extent we do not know—to illegal drugs as well. The brief also states that "no harm has come to any client as a result of any of his actions." We expect Linda Slavings might disagree. Respondent's casual dismissal of the harm his misconduct inflicted upon her is disturbing.

gaged in numerous acts of misconduct in violation of the rules governing professional ethics. Over a considerable period of time and in the face of mounting evidence—six arrests for drug-related crimes—respondent showed himself unable to engage in the kind of critical self-reflection that would have prevented his self-destructive behavior. He has failed competently and diligently to represent clients. He has shown contempt for the Bar and the court by his refusal to respond to disciplinary inquiries. Respondent needs time to reassess his personal and professional life. A year's suspension will afford him that opportunity while the conditioned supervision we impose today will protect the public and the profession from any further acts of misconduct by this practitioner.

¶ 26 RESPONDENT IS SUSPENDED FROM THE PRACTICE OF LAW FOR ONE YEAR AND PLACED UNDER CONDITIONED SUPERVISION FOR TWO YEARS, BOTH THE SUSPENSION AND SUPERVISION TO BEGIN ON THE DAY THIS OPINION BECOMES FINAL, AND HE IS DIRECTED TO PAY THE COSTS OF THIS PROCEEDING IN THE AMOUNT OF $1,167.50, WHICH SHALL BE DUE NOT LATER THAN NINETY DAYS AFTER THIS OPINION BECOMES FINAL.

¶ 27 WATT, V.C.J., and HODGES, LAVENDER, OPALA, KAUGER, SUMMERS, BOUDREAU and WINCHESTER, J.J., concur.

¶ 28 HARGRAVE, C.J., concurs in part and dissents part.

HARGRAVE, C.J., concurring in part and dissenting in part.

¶ 1 I dissent from the court's imposition of a one-year suspension. I would suspend respondent's license for two years and a day.