2014 OK 20

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**William G. BERNHARDT, Respondent.**

**SCBD No. 6001.**

Supreme Court of Oklahoma.

March 25, 2014.

---

Loraine Dillinder Farabow, First Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for complainant.

Gary A. Rife, Rife Walters Stanley & Natarajan, LLP, Oklahoma City, OK, for respondent.

WINCHESTER, J.

¶1 The Professional Responsibility Tribunal (Trial Panel) after a Rule 7 hearing on September 5, and October 4 of 2013 filed its Trial Panel Report giving its Findings of Fact, and Recommendations covering discipline regarding the respondent, William G. Bernhardt.

## I.  FINDINGS OF FACT

¶2 The Trial Panel reports the following findings of fact.  On May 26, 2011, the respondent was arrested in Midwest City, Oklahoma, on charges in Count 1 of Driving while Under the Influence of Alcohol, Count 2 of Aggravated Attempting to Elude, and Count 3 of Unlawful Transportation of an Open Container of Alcohol.  The Oklahoma County charges were originally filed as misdemeanors.  On December 7, 2011, the respondent was arrested in Nebraska for Actu-

al Physical Control of a Vehicle While Under the Influence of Alcohol. The state of Nebraska filed a felony charge against him on December 9, 2011. That charge was amended to a misdemeanor on March 9, 2012. On August 9, 2012, the state of Nebraska entered its Journal Entry and Order fining the respondent and sentencing him to 120 days of house arrest. He was allowed to serve and completed his sentence in Oklahoma.

¶ 3 On January 12, 2012, Counts 1 and 2 of the Oklahoma County charges were amended to felonies. On October 10, 2012, the respondent pled guilty to the two Oklahoma County felony and misdemeanor charges. He was fined on all charges and received a six-year deferred sentence on Counts 1 and 2. His deferred sentence does not end until October 10, 2018. The condition of the deferred sentence included a requirement that he wear an alcohol detecting ankle bracelet until April 13, 2013, and that he continue the out-patient follow-up treatment program with Philip Hyde, Ph.D., which he had been attending at the time of his sentencing. He must continue the program until Dr. Hyde releases him. He is also required to complete two years of supervised probation through the Oklahoma County District Attorney's office and during this period he may not possess or consume alcohol or visit establishments where the main item for sale or use is alcohol. He is required to use an interlock device on his automobile for three years, which ends in late 2015.

¶ 4 The respondent had previous convictions involving alcohol. In 2007, he received misdemeanor convictions for Driving Under the Influence of Alcohol and Leaving the Scene of an Accident in connection with events occurring in Jenks, Oklahoma. He hit a mailbox. Additionally, he had a 2007 misdemeanor drunk driving conviction in Tulsa, and a misdemeanor public drunk conviction. The latter conviction resulted from his still being drunk the next morning after consuming alcohol the day before.

¶ 5 The respondent was admitted to the Oklahoma Bar Association and his name was entered on the Roll of Attorneys in 1986. He practiced law in Tulsa from 1986 until 1996. He is presently an author who published his first book while still practicing law and subsequently published 31 books, including many legal thrillers. He has over ten million books in print, which have been translated into more than two-dozen languages. He has won many prestigious awards for his writing. He also teaches private fiction-writing seminars, teaches writing at Rose State College and legal education courses throughout the country. The trial panel reports in its October 31, 2013, report that within the past year, the respondent has taught CLEs in Wisconsin, New Mexico, Alaska, Ohio, Missouri, Nevada, California, and Indiana.

¶ 6 The respondent has not practiced law since 1996 and has no plans to return to his practice. He testified that he worked hard for his law license, is proud of it, and wants to keep it. He was not practicing law during the incidents arising from his interim suspension. Accordingly, no clients were or could have been harmed or adversely affected by his actions.

¶ 7 The panel found that the respondent is an alcoholic, who did not begin drinking at all until he was in his forties. At the time of the report, he was 53 years old. He was a binge drinker who did not drink every day, but had intermittent episodes of heavy drinking, "every month or two." These episodes occurred when he was alone for a period of time. He would drink at home and then leave the house after remembering "he had something to do." Regarding the 2011 Oklahoma charges, the respondent testified he had been drinking at home, left it and "hadn't gone a mile until [he] realized [he] couldn't drive." He then turned around and headed home. Even though the arresting officer's affidavit states that after the officer turned on his siren, the respondent began to swerve more aggressively around traffic, and ran a red stoplight, the respondent testified he did not see the officer until he turned onto a nearby residential street where he lives.

¶ 8 The trial panel found that the respondent had not consumed alcohol since he was arrested in Nebraska, December 7, 2011. He chose December 10, 2011, as his sobriety date because on that date he was clear-headed.

¶ 9 The panel also found that in 2007 the respondent voluntarily put a vehicle interlock device on his automobile to safeguard against another occurrence of driving under the influence. But he testified, "it had not gotten through my head yet that I just can't drink. There is no safe level for me." Because he processes alcohol extremely slowly, he put the device on his vehicle because he would drink at night and wake up in the morning falsely believing he was fine.

¶ 10 The respondent entered an inpatient program for the treatment of alcoholism in 2007 after his convictions in Jenks and Tulsa. He completed a month-long program and remained sober for a little over a year. After tumultuous events in his life, he began binge drinking. He admitted himself to an eight-day inpatient program in March 2010. Still he occasionally resumed binge drinking.

¶ 11 After his arrest in Nebraska in December 2011, the respondent entered Promises Treatment Center in Los Angeles, California, and successfully completed the 31–day inpatient program. This helped him conclude that he could not drink anymore and that has been the key to his sobriety ever since. He attended follow-up outpatient programs in the Oklahoma City area including 90 Alcoholics Anonymous (AA) meetings in 90 days, and three months at a program at the University of Oklahoma, which Dr. Hyde recommended. The Promises program had recommended Dr. Hyde to the respondent and that treatment became a condition of his Oklahoma deferred sentence. In May 2013, Dr. Hyde reported to the supervisor of the respondent's probation that he had "achieved maximum psychological improvement." The respondent continues to be under Dr. Hyde's supervision for aftercare.

¶ 12 The respondent testified that he consistently attends AA meetings once a week, and does a daily devotional, which comes from a book provided by AA and which Dr. Hyde suggested. The respondent also meditates each day, which he reports is calming and stress reducing. He learned this during inpatient therapy. He has "intensified" his teaching after Dr. Hyde and Promises suggested he "get out more" and interact rather than sitting at home all day at a laptop.

¶ 13 The respondent used a vehicle interlock device on his car for 18 months preceding the trial panel hearing, a transdermal alcohol detection bracelet during most of 2012, and a GPS device for several months in 2013. In a few instances when the bracelet registered a possible use of alcohol, the evidence was undisputed that the device appeared to have malfunctioned. Follow-up urine testing indicated that the respondent had not consumed alcohol. Dr. Hyde testified that he had no reason to believe the respondent had relapsed at any time since December 2011. Dr. Hyde testified that the respondent had been responsive, candid, straightforward, and had done what he had been required to do in his follow-up counseling. Dr. Hyde believes the respondent is highly motivated to continue his efforts to remain alcohol-free. The respondent did not relapse after a recent breakup with his girlfriend. The doctor expressed confidence that the respondent is sincere in his efforts to maintain sobriety. He lives within five minutes of friends and family, which is why he moved back to Midwest City from Tulsa. When he feels a triggering event has occurred he will call his sister, who lives nearby.

¶ 14 Dr. Hyde expressed his opinion that Lawyers Helping Lawyers would be more valuable to the respondent than AA. He said he had reservations about requiring AA visits. During follow up questions by the Panel, Dr. Hyde expressed his view that the respondent is not going to benefit from AA visits. His experience with some other lawyers was that they did not like AA but they did like being with their peers in Lawyers Helping Lawyers. He said the same was true of physicians, that they benefitted the most from a group that had just physicians in it. The same was true of the respondent.

¶ 15 When the trial panel brought the respondent back to testify again, his attorney asked, "And is there anything in particular about the AA meetings that you feel is important or beneficial to you?" He answered:

> "Well, I wouldn't say it's the most beneficial thing I do. I do find it stressful, to be honest. I mean, we talked the last time about being introverted and having social

anxieties, and I think there are some people who respond well to that kind of group, the fraternal thing, and some people who don't.... [T]here's nothing bad about it, but do I think it's the most beneficial thing I do? No."

He testified on cross-examination that he had been attending AA meetings in addition to meetings of Lawyers Helping Lawyers and he did not find it uncomfortable to be there.

¶ 16 The Trial Panel reported that the respondent had begun attending Lawyers Helping Lawyers and was willing to sign a contract with that organization. He is in good standing with his probationary status. The panel found the respondent is of good moral character, other than his problems with alcoholism, and is otherwise well-respected by attorneys, writers and members of the community, and by those who know and work with him.

¶ 17 A senator in the Oklahoma Legislature, who has practiced law for over 50 years, testified he has known the respondent since birth, and other than the alcohol problems, considered the respondent ethical. A Tulsa writer who has been nominated for three Pulitzer Prizes and a national book award and who is involved in the literary community testified that despite the respondent's problems with alcohol, he was very honest and truthful, trustworthy and a consummate professional. As that author is also an alcoholic and had been sober for eighteen years he believed his experience would allow him to detect "a drunk who's a liar immediately." Other writers and an associate district judge, who testified under subpoena, all testified in support of the respondent's character. No evidence was presented to the Trial Panel suggesting the respondent had been disciplined, nor were there any complaints reported to the Oklahoma Bar Association.

¶ 18 The panel recommended that this Court lift the respondent's interim suspension and that he be placed on probation for a period of two years and one day, with conditions.

## II. DISCUSSION

¶ 19 This Court reviews all proceedings before the Professional Responsibility Tribunal, examining the record and assessing the weight and credibility of the evidence, *de novo*. *State ex rel. Oklahoma Bar Association v. Kinsey*, 2009 OK 31, ¶ 12, 212 P.3d 1186, 1192. We find the record sufficient for this review. The facts are not disputed and the Bar Association and the respondent agree with the Trial Panel's recommendations for discipline.

¶ 20 The respondent's plea of guilty to the Oklahoma County criminal charges serve as a basis for this summary disciplinary proceeding. Rule 7.1 of the Rules Governing Disciplinary Proceedings (RGDP) provides:

"A lawyer who has been convicted or has tendered a plea of guilty or nolo contendere pursuant to a deferred sentence plea agreement in any jurisdiction of a crime which demonstrates such lawyer's unfitness to practice law, regardless of whether the conviction resulted from a plea of guilty or nolo contendere or from a verdict after trial, shall be subject to discipline as herein provided, regardless of the pendency of an appeal."

Even though a lawyer is convicted of a felony, not every criminal conviction facially demonstrates the lawyer's unfitness to practice law. *State ex rel. Oklahoma Bar Association v. Armstrong*, 1990 OK 9, ¶ 8, 791 P.2d 815, 818. Comment 2 to The Oklahoma Rules of Professional Conduct, 5 O.S. 2011, ch.1, app. 3–A discusses this issue. A lawyer should be professionally answerable only for offenses that indicate lack of characteristics relevant to law practice. These offenses typically involve violence, dishonesty, breach of trust, or serious interference with the administration of justice. But a pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation.[1] While discussing Comment 2, the

---

1. Comment 2, ORPC, 5 O.S.2011, ch.1, app. 3–A provides: "[2] Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offense carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving "moral turpitude."

*Cooley* Court cited *Armstrong,* for the rule that a felony conviction for driving under the influence does not facially demonstrate unfitness to practice law. *State ex rel. Oklahoma Bar Association v. Cooley,* 2013 OK 42, ¶ 13, 304 P.3d 453, 456. However, Comment 2 observes, "A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation."

¶ 21 The facts in this disciplinary case are unusual to the extent that the respondent has maintained his license to practice law, but has not practiced law in over fifteen years. He is very successful in his chosen profession of writing, and has no present intention to return to the practice of law. No clients were or could have been adversely affected by the respondent's conduct. The Trial Panel concluded that except when using alcohol, the respondent is honest, highly ethical and law-abiding. He is an alcoholic. The Trial Panel recommends that the respondent be placed on probation for a period of two years and one day, with conditions.

¶ 22 In *State ex rel. Oklahoma Bar Association v. Burns,* 2006 OK 75, 145 P.3d 1088, that respondent was suspended from the practice of law for six months and placed under supervised probation for two years. He had been arrested on two occasions within one month in 2005 and charged with felonies for driving a motor vehicle while under the influence of alcohol during each arrest and transporting an open container of liquor only during the second arrest. He entered blind pleas of guilty to two felony counts of driving under the influence and was sentenced to a term of three years in the Oklahoma Department of Corrections, to run concurrently, all suspended, and ordered to pay a fine for $1,000.00 plus costs. The district court also ordered him to comply with rules and conditions of probation, which required him to complete inpatient treatment, attend Aftercare every two weeks for twelve months, attend AA meetings at least twice weekly, have a monthly urinalysis, voluntarily give up his driver's license for one year, meet with an AA sponsor for at least one hour a week, and execute a Lawyers Helping Lawyers contract.

¶ 23 When the Bar Association began an investigation prior to the pleas of guilty, it learned from the respondent's lawyer that the month after his second arrest he had contacted Lawyers Helping Lawyers and entered a treatment facility. Subsequently his counsel sent the Bar Association a letter from the treatment center that he had successfully completed a 28–day treatment program and had been attending Alcoholics Anonymous meetings twice a week.

¶ 24 He had previously been charged with alcohol-related offenses in 1997, 1999, and twice in 2001. He had entered *nolo contendere* pleas. He had entered treatment four times before. One time he had remained sober for about eighteen months and at another time he had remained sober for a year. He had expressed remorse for his actions. He admitted he was an alcoholic, and accepted responsibility for his actions. He had abstained from alcohol for more than one year. No clients were neglected by his conduct.

¶ 25 While acknowledging the mitigating circumstances, the Court observed that the disciplinary proceeding was brought to maintain the public's confidence in the bench and bar by disciplining a lawyer who had harmed the public image of the profession by criminal misconduct outside the setting of his professional practice. *Burns,* 2006 OK 75, ¶ 24, 145 P.3d at 1093. The Court further observed that its responsibility required a consistent discipline with that imposed on other attorneys, and added that the terms would vary since each situation must be decided based on different offenses and differ-

That concept can be construed to include offenses concerning some matters of personal morality, such as adultery and comparable offenses, that have no specific connection to fitness for the practice of law. Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, breach of trust, or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation."

ent mitigating circumstances. *Burns,* 2006 OK 75, ¶ 26, 145 P.3d at 1094. The Court agreed with the trial panel's conclusion concerning suspension and two years of probation with the conditions that (1) he must abide by all existing conditions for probation imposed by the district court; (2) abide by the Rules of Professional Conduct; (3) sign a contract with Lawyers Helping Lawyers and be supervised by a designated committee member for the entire period of his probation; (4) participate in the Alcoholics Anonymous program or in one of another organization recognized by his contract with Lawyers Helping Lawyers; (5) report his attendance and status to his designated committee member; and (6) refrain from the use or possession of intoxicants. *Burns,* 2006 OK 75, ¶ 35, 145 P.3d at 1095.

¶ 26 In the case of *State ex rel. Oklahoma Bar Association v. McBride,* 2007 OK 91, 175 P.3d 379, Mr. McBride had been charged in 2007 with Operating a Motor Vehicle While Under the Influence of Alcohol. He had several other alcohol-related convictions dating back to 1997. He admitted he was an alcoholic and had sought support from Lawyers Helping Lawyers, who referred him for treatment to a psychologist. He also signed a two-year agreement with them and participated in an outpatient program at St. Anthony's Hospital. He expressed remorse and was very candid with the Trial Panel. The Court found no evidence of client neglect. *McBride,* 2007 OK 91, ¶ 19, 175 P.3d at 386. The Court observed that it was to his credit that Mr. McBride wholeheartedly embraced sobriety and had done everything required of him and more to maintain sobriety. *McBride,* 2007 OK 91, ¶ 22, 175 P.3d at 387.

¶ 27 The Trial Panel recommended discipline of public censure coupled with a deferred suspension of two years and one day. The Court followed the recommendation of the Trial Panel. For the duration of the two years and one day probationary period Mr. McBride was required to (1) refrain from all use of alcohol or mind-altering substances; (2) refrain from the use of any and all illegal drugs; (3) maintain an active participation in and attendance at meetings of Alcoholics Anonymous, attending at least three meet-

ings per week; (4) sign and maintain a contract with Lawyers Helping Lawyers; (5) successfully complete an intensive outpatient treatment program in a qualified rehabilitation facility, which the Court noted he had already completed; (6) submit to random drug screens or urinalysis to be determined by his sponsor with Lawyers Helping Lawyers; and (7) waive all questions of confidentiality and permit his sponsor at Lawyers Helping Lawyers to notify the General Counsel of the Oklahoma Bar Association in the event of any default by the respondent in the terms of the probation or deferred suspension. *McBride,* 2007 OK 91, ¶ 33, 175 P.3d at 390.

¶ 28 The case of *State ex rel. Oklahoma Bar Association v. Garrett,* 2005 OK 91, 127 P.3d 600, also involved a lawyer's chronic alcoholism and professional misconduct not involving clients. Mr. Garrett was convicted of two counts of misdemeanor sexual battery of two women on two different occasions, both of which occurred when he was intoxicated. He did not remember either incident. He had previous alcohol-related charges and allegations. Mr. Garrett contacted Lawyers Helping Lawyers and entered an inpatient treatment facility where he remained for 72 days until he was discharged. He subsequently attended four to five AA meetings per week. The Court imposed public censure, a one-year probation with conditions and payment of costs.

### III. CONCLUSION

¶ 29 We conclude that the repetition of the DUI offenses admitted by the respondent provide clear and convincing evidence of respondent's indifference to legal obligations and engaging in conduct that reflects adversely on the legal profession. The stipulated conduct serves as a basis for the imposition of discipline, which we must determine. Considering the *McBride, Burns,* and *Garrett* cases, we conclude the recommendation, in which the respondent, Bar Association, and Trial Panel agree, we accept the Trial Panel's recommendation of discipline, with the exception of mandatory attendance to AA meetings. After considering the testimony of Dr. Hyde and the respondent, the

respondent may, but will not be required to attend AA meetings.

¶ 30 This Court orders the respondent's interim suspension lifted. The respondent shall be subject to a deferred suspension of two years and a day. During this period, the respondent shall (1) refrain from any and all use of alcohol, mind-altering substances or illegal drugs; (2) sign and maintain a contract with Lawyers Helping Lawyers, and shall have weekly contact with his mentor; and (3) waive all questions of confidentiality and permit his sponsor at Lawyers Helping Lawyers to notify the General Counsel of the Oklahoma Bar Association in the event of any default by the respondent in the terms of the probation or deferred suspension.

¶ 31 At the recommendation of the Trial Panel, this Court also orders that at the end of the probationary period, if the respondent has not violated the terms of the probation, the suspension will be dismissed. But if the General Counsel receives information that the respondent has violated the terms and conditions of his probation, the General Counsel shall immediately notify the Court and the suspension of two years and one day will be imposed, to commence on the date of the violation.

¶ 32 The respondent is ordered to pay the costs of these proceedings in the amount of $2,275.48, as reflected in the Oklahoma Bar Association's Amended Application to Assess Costs. The respondent is ordered to pay this amount within ninety days of the date this opinion becomes final.

**THE RESPONDENT'S INTERIM SUSPENSION IS LIFTED, AND A DEFERRED SUSPENSION OF TWO YEARS AND ONE DAY IS IMPOSED; DEFERRAL OF SUSPENSION IS SUBJECT TO COMPLIANCE WITH THE TERMS OF PROBATION, AND THE RESPONDENT IS ORDERED TO PAY COSTS WITHIN 90 DAYS.**

CONCUR: COLBERT, C.J., REIF, V.C.J., KAUGER, WINCHESTER, EDMONDSON, JJ.

DISSENT: WATT, J. who joins COMBS, J., TAYLOR, J. who joins COMBS, J., COMBS, J., and GURICH, J., who joins COMBS, J.

TAYLOR, J., dissenting, The Respondent is a convicted felon. This suspension should be immediately imposed and not deferred.

COMBS, J., Joined by WATT, J., TAYLOR, J., and GURICH, J., dissenting.

¶ 1 I dissent to the majority opinion.

¶ 2 The majority places Respondent on a deferred suspension subject to certain probationary rules.[1]

¶ 3 Respondent has entered a plea of guilty to various alcohol-related felony and misdemeanor charges. He is subject to a deferred sentence until October 10, 2018, for two Oklahoma County felonies, Driving Under the Influence and Aggravated Attempting to Elude a Police Officer. He admits to being a binge drinker, and has had multiple alcohol-related contacts with law enforcement, not only in Oklahoma, but in Nebraska, as well.

¶ 4 Respondent admits he has no intention of practicing law, but wishes to maintain his license. Although Respondent has not practiced law in some time and indicates he has no intention of returning to the active practice of law, he continues to participate as a speaker at continuing legal education seminars in Wisconsin, New Mexico, Alaska,

1. Although this Court has previously entered "deferred" probation in the administration of discipline, I cannot condone such a resolution. If this court is going to impose any probationary term there must be significant supervision of the respondent to monitor compliance. The majority imposes three conditions of probation, 1) refrain from the use of alcohol, mind-altering substances or illegal drugs; 2) sign and maintain a contract with Lawyers Helping Lawyers and a required waiver of confidentiality permitting his sponsor at Lawyers Helping Lawyers to notify the General Counsel in the event of a violation of his terms of probation or deferred suspension; 3) maintain weekly contact with his mentor. There is no required random alcohol or drug testing. Nor is there any incorporation of the terms or conditions of his felony probation in Oklahoma County which at the bare minimum requires "supervision" by the District Attorney. See 22 O.S.2011 991d. If probation conditions are to be imposed they must be subject to significant supervision in order to monitor the Respondent's complete compliance.

Ohio, Missouri, Nevada, California, and Indiana.

¶5 We have previously stated that substance abuse is incompatible with the practice of law. *State ex rel. Oklahoma Bar Association v. Giger,* 2001 OK 96, ¶21, 37 P.3d 856, 864. The majority opinion will effectively allow Respondent, should he so chose, to practice law in the State of Oklahoma while he is subject to the requirements of his deferred felony sentence. Respondent has entered a plea of guilty to felonies and should not be allowed to practice law while his sentencing status remains in doubt. In short, being on felony probation is incompatible with the practice of law.

¶6 The goal in disciplinary proceedings is to protect the interests of the public and to preserve the integrity of the courts and the legal profession. *State ex rel. Oklahoma Bar Ass'n v. Kinsey,* 2009 OK 31, ¶15, 212 P.3d 1186, 1192. How do we protect the integrity of the legal profession when we allow felony probationers to continue practicing law?

¶7 I would suspend Respondent for the balance of his probation in Oklahoma County. Should Respondent be successful in his felony deferred sentence and then desire to seek readmission, he could pursue that course of action under Rule 11.