OSCN Found Document:STATE ex rel. OKLAHOMA BAR ASSOCIATION v. REEDY

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 STATE ex rel. OKLAHOMA BAR ASSOCIATION v. REEDY
2023 OK 99
Case Number: SCBD-7268
Decided: 10/17/2023
THE SUPREME COURT OF THE STATE OF OKLAHOMA

Cite as: 2023 OK 99, __ P.3d __

 

 

STATE OF OKLAHOMA ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,
v.
JAMES DARRELL REEDY, Respondent.

BAR DISCIPLINARY PROCEEDING

¶0 In 2018, the respondent, James Darrell Reedy pled guilty to manslaughter, in the State of Alabama, for recklessly causing the death of another person while operating a motor vehicle while he was under the influence of alcohol. Manslaughter is a felony in Alabama. On May 2, 2022, someone notified the Oklahoma Bar Association of respondent's Alabama conviction, and the OBA, on June 3, 2022, notified this Court. Pursuant to Rule 7, of the Oklahoma Rules Governing Disciplinary Proceedings, the Court entered an Order of Immediate Interim Suspension on June 20, 2022, and gave respondent the opportunity to show cause why the suspension should not be set aside. On October 10, 2022, the Court continued the interim suspension, and referred the matter to the Professional Responsibility Tribunal for a hearing to impose final discipline. The PRT recommended that the respondent be suspended from the practice of law for two years and one day, and that costs be imposed. The Oklahoma Bar Association agreed with the recommendation and upon de novo review, we hold that the respondent's license to practice law is suspended for two years and one day, retroactively beginning on June 20, 2022. The respondent is assessed costs in the sum of $2,883.68 for payment not later than ninety days after this opinion becomes final.

RESPONDENT SUSPENDED;
COSTS IMPOSED.

Stephen L. Sullins, Assistant General Counsel, Oklahoma Bar Association, for Complainant.

Travis A. Pickens, Oklahoma City, Oklahoma, for Respondent.

KAUGER, J.:

¶1 The Oklahoma Bar Association (OBA) notified the Court that the State of Alabama had convicted the respondent, James Darrell Reedy (respondent) of a felony as a result of a drunk driving accident which killed a bicyclist. Rule 7.1 of the Oklahoma Rules Governing Disciplinary Proceedings, 5 O.S. 2021 Ch. 1, App. 1-A, provides that a lawyer who has been convicted of a crime which demonstrates unfitness to practice law shall be subject to discipline.[1] After a disciplinary hearing the Professional Responsibility Tribunal (PRT) recommended that the respondent be suspended for two years and one day. The OBA agreed with the recommendation and upon de novo review, we hold that the respondent's license to practice law should be suspended for two years and one day, retroactively beginning on June 20, 2022. The respondent is assessed the costs of this proceeding in the sum of $2,883.68 for payment not later than ninety days after this opinion becomes final.

FACTS

¶2 The respondent is currently 68 years old. He became a member of the OBA on April 22, 1994. His official roster address is in Clinton, Oklahoma. He also became a member of the Alabama State Bar Association on April 28, 1995. Prior to being a lawyer, his background was in the oil and gas industry.

¶3 After law school, respondent worked in Alabama until he moved back to Oklahoma in 1997. The record is unclear as to exact dates, but at some point he also lived in Wichita Falls, Texas. In 2014, the respondent, with a small inheritance and money saved, stepped away from practicing law for two years to see if he might like retirement. During this time, while driving under the influence of alcohol, he caused the death of a bicyclist while visiting Alabama.

¶4 The accident occurred at night on February 8, 2016. There were conflicting accounts of what happened. According to the police, the respondent left the scene of the accident and was apprehended after the collision going the wrong direction up a hill. The respondent smelled of alcohol, had damage to his truck, and what appeared to be blood on the truck. The victim's back tire was crushed and his bike had reflectors on it.

¶5 According to the respondent, he thought he might have hit a deer because he had hit one earlier in Texas while en route to Alabama. He stated that there was no place to immediately turn around so he drove until he could turn around and go back to see what he hit. By the time he returned to the scene of the accident, the police were already on the scene. He also said the victim was wearing dark clothing and he did not see any lighting or reflectors on the bicycle.

¶6 The police arrested the respondent after he failed a field sobriety test. He subsequently spent eight days in jail trying to contact someone through the jail's faulty telephone system to post bail. Charges for leaving the scene of an accident were eventually dropped.

¶7 Concerned about how the accident would affect his ability to work, the respondent contacted the OBA Ethics Counsel soon after his arrest to seek advice about reporting the incident to either the OBA and/or future employers. A logged record of the respondent's OBA visit, dated March 31, 2016, provides:

Question regarding duty to report himself. He has been charged in Alabama with multiple crimes, (DUI, leaving the scene of an accident, negligent homicide). He wants to self-report because it is weighing so heavily upon him. He has been to treatment, is continuing with follow-up treatment and obtained counsel to represent him in the criminal case in Alabama.

[Response] There is no duty to self-report. Recommended that he obtain counsel here in Oklahoma to help him consider how best to present any convictions to the OBA if his counsel advises him to do so.

The respondent explains that he understood the conversation to mean that he did not need to self-report anything about the accident to either the OBA or potential employers.

¶8 In April of 2017, the Grand Jury of Baldwin County, Alabama, indicted the respondent for recklessly causing the death of another person while operating a motor vehicle under the influence of alcohol. In February or March of 2018, the respondent thought he had resigned from the Alabama Bar, but later learned that he had merely been placed on voluntary inactive status. On March 21, 2018, the respondent entered a plea of guilty to manslaughter, which under Alabama law is a felony.

¶9 Alabama sentenced the respondent, resulting in a thirty-six months suspension and probation.[2] The respondent entered into a fifty-six day alcohol treatment program, and then lived in a sober living house in Wichita Falls, Texas, for eighteen months. He has not drunk alcohol or used any illicit drugs since the 2016 accident.

¶10 Feeling bad about the accident, the respondent placed himself on a "self-imposed" suspension from any further law practice from 2016 until 2020, when he began to run out of money. He never reported the conviction to the Alabama State Bar or the OBA. In February of 2020, The respondent went to work for the Oklahoma Indigent Defense System (OIDS). He did not inform OIDS of his conviction or that he was on probation.

¶11 In April of 2022, someone reported the past felony conviction to the OBA which resulted in the opening of an investigation by the OBA. After OIDS learned of the felony conviction, they gave him the opportunity to resign, which he did on April 28, 2022.

¶12 Soon thereafter, the respondent again contacted the OBA to further inquire about self-reporting. The ethics counsel responded as follows:

Mr. Reedy,

I write in response to your recent inquiry. There is no duty to self-report in the ORPC. There is a duty to report discipline for lawyer misconduct in another jurisdiction under RGDP 7.7(a). In the situation that you described to me there was no imposition of discipline for lawyer misconduct and therefore no duty to self-report. I concur with the advice that you have indicated that you received previously from Ethics Counsel. I am presently looking for the memoranda from that prior inquiry. Because some prior records are not kept digitally, it may take some time to locate them. Do not hesitate to contact me if I can be of further assistance.

On June 3, 2022, the OBA filed a Notice of Plea of Guilty and Sentence with this Court, which certified copies of the conviction attached. After inquiries from the OBA, the General Counsel of the Alabama State Bar filed a Petition with the Alabama Supreme Court on June 10, 2022, seeking to Suspend or Disbar Reedy due to his Alabama Felony Conviction. On June 20, 2022, this Court entered an Order of Immediate Interim Suspension, but gave the respondent the opportunity to show why the suspension should be set aside.

¶13 The respondent asked us to set aside the interim suspension because the accident happened almost six and a half years ago, and it did not demonstrate any unfitness to practice law. The OBA requested that suspension remain in place until final discipline was imposed. On October 3, 2022, we issued an order keeping the suspension in place, and remanding the cause to the PRT for a hearing for the imposition of final discipline. Also on October 3, 2022, the Alabama Supreme Court struck the respondent from the Roll of Attorneys. The respondent did not challenge the Alabama disbarment because he does not have the resources to do so, and has no plans to return to Alabama.

¶14 The PRT held a final discipline hearing on March 9, 2023. Among the stipulations between the OBA and the respondent was the stipulation that: "Mr. Reedy had no obligation to report the conviction in Alabama to the Oklahoma Bar Association." (Emphasis added). The PRT recommended that the respondent be suspended for two years and one day, ordered to pay costs of the proceeding and join Lawyers Helping Lawyers. The OBA agrees with the PRT recommendation. After the briefing cycle was complete, the cause was assigned on June 6, 2023, for review by this Court.

A. Stipulations and Duty to Report Convictions.

¶15 In this cause, both the OBA and the respondent stipulated that he was not under any duty to self-report his convictions to the OBA. Because of the stipulation, the respondent's two inquiries regarding self-reporting, the OBA's two responses, and the lack of express language in Rule 7, the Rules Governing Disciplinary Proceedings, 5 O.S. 2021 Ch. 1, app. 1-A regarding self-reporting, we take this opportunity to clarify, and to provide guidance to the bench and bar regarding both stipulations and self-reporting.

¶16 Stipulations in bar matters generally occur as either stipulations to specific facts or stipulations to specific attorney misconduct (eg. violations of the Rules). Regardless of which stipulation may occur, this Court utilizes a complete record which includes the PRT report, the evidence submitted to the PRT, stipulations, pleadings, and the merits of the disciplinary charges. We do this because we seek to impose equal or uniform discipline, and to avoid the use of disparate treatment given to those being disciplined.[3] When the parties stipulate, the stipulations do not bind the Court because our duty is to review all of the evidence de novo to decide if misconduct allegations are established by clear and convincing evidence.[4]

¶17 Criminal convictions are not required for attorney discipline,[5] but the Oklahoma Rules of Disciplinary Proceedings, 5 O.S. 2021 Rules 7.1-7.10, Ch. 1, app. 1-A, relate to the discipline of a convicted lawyer. Rule 7.1, provides:

A lawyer who has been convicted or has tendered a plea of guilty or nolo contendere pursuant to a deferred sentence plea agreement in any jurisdiction of a crime which demonstrates such lawyer's unfitness to practice law, regardless of whether the conviction resulted from a plea of guilty or nolo contendere or from a verdict after trial, shall be subject to discipline as herein provided, regardless of the pendency of an appeal.

The Rule applies to crimes which demonstrate such lawyer's unfitness to practice law, but it does not define which crimes demonstrate unfitness to practice law. Nor does any other provision of the Rule provide a definition.

¶18 Rule 7.2 requires an Oklahoma court clerk to report lawyer convictions,[6] but nowhere in Rule 7 is there express language requiring a lawyer to self-report that criminal charges have been filed or that the lawyer has actually been convicted. Rule 7.7 does impose a duty on a lawyer to self-report if they have been subject to disciplinary proceedings in another jurisdiction.[7]

¶19 However, there is existing authority to suggest that a lawyer has an implicit duty to self-report a criminal conviction, at least to the extent the conviction has been previously determined to demonstrate an unfitness to practice law. This implicit duty comes from at least three facets:

1) this Court controls and regulates the practice of law in Oklahoma and if we, as a licensing authority are not advised of criminal actions by the persons we regulate, we cannot fulfil our duties;[8]

2) before admittance to the Oklahoma Bar, criminal histories are reviewed, which indicates the relevance of criminal conduct to the license to practice law;[9] and

3) Attorneys admitted to practice law are officers of the court and judicial system.[10]

¶20 To discover which types of convictions have been previously determined to demonstrate an unfitness to practice law, a lawyer need only look at our prior disciplinary cases for examples. In State ex rel. Oklahoma Bar Ass'n v. Cooley, 2013 OK 42, ¶¶12-13, 304 P.3d 453 and State ex rel. Oklahoma Bar Ass'n v. Armstrong, 1990 OK 9, ¶8, 791 P.2d 815 we explained that not every criminal conviction facially demonstrates a lawyer's unfitness to practice law. Rather, a lawyer should professionally answer only for offenses that indicate a lack of those characteristics relevant to the practice of law. Some include: fraud, wilful failure to file a tax return, offenses involving violence, dishonesty, breach of trust, or serious interference with the administration of justice.

¶21 Armstrong also teaches that the conviction for a felony of driving under the influence (DUI) still does not facially demonstrate unfitness to practice law, but that issue should be referred for a hearing and report on whether the circumstances surrounding the DUI offense warranted discipline and if so, the recommendation as to the appropriate discipline. This can only be done if the OBA is made aware of the conviction.

¶22 The better practice is to report criminal convictions, and let the Court[11] determine whether the application of Rule 7 is warranted. In this cause, the respondent was convicted in 2018. A delay in the suspension/disciplinary process was a disservice to both the public and the attorney. Had the OBA been given timely notice of the conviction, respondent's inability to practice law for a specified time would likely have been over by now. On the other hand, had he been reciprocally disbarred in Alabama before this cause was brought, most likely he would have been disbarred at that time.

B. Mitigating Evidence and Comparison Discipline.

¶23 The respondent argues that his plea of guilty did not involve a crime which demonstrates his unfitness to practice law. He requests that his period of voluntary suspension from the practice of law be sufficient discipline. The OBA expresses concern that the crime occurred over six years ago and, while the respondent has taken steps to deal with alcohol abuse, he has gone for years without a review of his criminal act by the professional licensing authority of either Oklahoma or Alabama. It argues that his criminal act demonstrates his unfitness to practice law.

¶24 The PRT hearing consisted of testimony of nearly a dozen people, including: the respondent's current girlfriend and her son, lawyers who had worked directly with the respondent, and people who were involved with the respondent's recovery. All of them gave glowing recommendations concerning the respondent's character, competence, remorse, and commitment to recovery. The respondent was convicted of an extremely serious crime which resulted in a life taken, but it did not involve engaging in the practice of law, or causing any direct harm to a client.

¶25 The respondent takes full responsibility for the accident and the loss of life he caused. He believed he had voluntarily resigned from the Alabama Bar, but he never reported the conviction to the OBA. He did, at least, seek advice from the OBA on whether to report the conviction. We cannot ignore the ambiguous and potentially misleading advice from the Bar which confused the respondent. He self-suspended, and began working for indigent clients at OIDS where he reportedly excelled in his representation. So much so, that OIDS indicated they might be open to hiring him again. He remains committed to the OIDS community, and believes it is his true calling. His recovery from drinking has been responsible. He has not practiced law since his temporary suspension.

¶26 In previous cases, we have imposed various disciplines. In State ex rel. Oklahoma Bar Ass'n v. Armstong, 1990 OK 9, 791 P.2d 815, an attorney was convicted of a felony, second offense of Driving While Under the Influence. The Court found no evidence of the attorney's unfitness to practice law and no discipline was imposed for his felony conviction. Ordinarily, when a lawyer pleads guilty to or is convicted of a misdemeanor of Driving Under the Influence, we routinely impose no discipline and dismiss the matter. We did so in State ex rel. Oklahoma Bar Association v. Lepack, SCBD No. 7193, Rogers, SCBD No. 6739, Carlton, SCBD 6969, Sheers, SCBD 7267, and Porter, SCBD 7082.[12]

¶27 However, in these cases no other persons were injured by the impaired driving of the lawyers and the convictions were misdemeanors, rather than felonies. The result has differed when a person is injured. For example, State of Oklahoma ex rel. Oklahoma Bar Ass'n v. Arnett, SCBD 6676, the attorney hit and killed a pedestrian who was walking down the street in the center of her traffic lane. Arnett entered a plea of guilty to manslaughter 1st degree and she was sentenced to twelve years in custody with the last eight to be suspended. We imposed an Order of Immediate Interim Suspension and ultimately left the interim suspension in place until her incarceration ended which effectively left her suspended for four years.

¶28 In State ex rel. Oklahoma Bar Association v. Wyatt, 2001 OK 70, 32 P.3d 858, we disbarred the intoxicated attorney after he crossed the center line of the road, struck an oncoming truck and killed the driver. He received a twenty year sentence in the penitentiary, and had a prior drunk driving conviction.

¶29 In State ex rel Oklahoma Bar Association v. Conrady, 2012 OK 29, 275 P.3d 133, after a break up, the attorney resorted to alcohol and pain medication. He broke into his ex-girlfriend's house and discharged a gun repeatedly in the house, and shot two automobiles. He pled guilty to six felony charges and he received six deferred sentences of five years each running concurrently. The court suspended Conrady for two years and one day.

¶30 In the Matter of the Reinstatement of Morgan, 2014 OK 110, 340 P.3d 1, alcohol and drag racing lead to the death of the attorney's passenger. The Court approved Morgan's resignation from the Bar Association and prohibited him from applying for reinstatement for a period of five years and one month from the effective date of his resignation.

¶31 State ex rel. Oklahoma Bar Association v. Bernhardt, 2014 OK 20, 323 P.3d 222, involved a lawyer who pled guilty to the felony crimes of Driving While Under the Influence and Aggravated Attempting to Elude a Police Officer, and the misdemeanor crime of Transportation of an Open Container. The attorney had not practiced law in over fifteen years, and instead had a career as an author. No clients were hurt by his conduct. The Court imposed a deferred suspension of two years and one day with a litany of conditions.

¶32 Considering all of the cases cited above, and the respondent's commitment to recovery, as well as his service to indigents through his work at OIDS, we agree with the PRT and OBA that the appropriate discipline is suspension for two years and one day. The suspension begins from the date we imposed the interim suspension which was June 20, 2022. We encourage participation in Lawyers Helping Lawyers and Alcoholics Anonymous, but do not make such participation mandatory. The respondent is assessed the costs of this proceeding in the sum of $2,883.68 for payment not later than ninety days after this opinion becomes final.

CONCLUSION

¶33 Our prior causes concerning reinstatement or final discipline provide some insight as to what the Court has done in similar causes. They also provide insight into what kinds of convictions demonstrate an unfitness to practice law as required by Rule 7, the Rules Governing Disciplinary Proceedings, 5 O.S. 2021 Ch. 1, App. 1-A. The respondent did not alert the OBA or the Alabama Bar of his criminal charges. Had he done so, six years would not have gone by without resolving the issue. However, neither the advice from the OBA ethics counsel nor the stipulation from the parties that respondent had no obligation to report the Alabama conviction to the OBA can be ignored. Nevertheless, if a lawyer believes the charges might have something to do with his or her "fitness" to practice law, the better practice would have been to self-report the charges. This is not a routine cause in which a lawyer was merely picked up for a misdemeanor Driving Under the Influence. Rather, another person was killed due to this lawyer's intoxication. Consequently, a suspension for two years and one day and the payment of costs is required.

RESPONDENT SUSPENDED;
COSTS IMPOSED.

KANE, C.J., ROWE, V.C.J., KAUGER, WINCHESTER, EDMONDSON, COMBS, GURICH, JJ., concur.

DARBY, (by separate writing), and KUEHN, JJ., dissent.

FOOTNOTES

[1] Rule 7.1 of the Oklahoma Rules of Disciplinary Proceedings, 5 O.S. 2021, Ch. 1, App. 1-A provides:

A lawyer who has been convicted or has tendered a plea of guilty or nolo contendere pursuant to a deferred sentence plea agreement in any jurisdiction of a crime which demonstrates such lawyer's unfitness to practice law, regardless of whether the conviction resulted from a plea of guilty or nolo contendere or from a verdict after trial, shall be subject to discipline as herein provided, regardless of the pendency of an appeal.

[2] Apparently, the respondent was sentenced to 180 months split to serve 18 months, but the split was reversed so that he only had 36 months of probation. He was not required to serve any of his sentence behind bars within the Alabama Department of Corrections.

[3] State ex. rel. Oklahoma Bar Ass'n v. Knight, 2015 OK 59, ¶17. fn. 14, 359 P.3d 1122; State ex. rel. Oklahoma Bar Ass'n v. Mothershed, 2011 OK 84, ¶69, 264 P.3d 1197.

[4] State ex rel. Oklahoma Bar Ass'n v. Taylor, 2003 OK 56, ¶2, 71 P.3d 18; State ex rel. Oklahoma Bar Ass'n v. Boone, 2016 OK 13, ¶3, 367 P.3d 509; State ex rel. Oklahoma Bar Ass'n v. Conrady, 2012 OK 29, ¶6, 275 P.3d 133.

[5] Title 5 O.S. 2021 Ch. 1, App. 1-A, Rules Governing Disciplinary Proceedings Rule 1.3 provides:

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

[6] Oklahoma Rules Governing Disciplinary Proceedings, 5 O.S. 2021, Rule 7.2, Ch. 1, App. 1-A provides:

The clerk of any court within this State in which a lawyer is convicted or as to whom proceedings are deferred shall transmit certified copies of the Judgment and Sentence on a plea of guilty, order deferring judgment and sentence, indictment or information and judgment and sentence of conviction to the Chief Justice of the Supreme Court and to the General Counsel of the Oklahoma Bar Association within five (5) days after said conviction. The documents shall also be furnished to the Chief Justice by the General Counsel within five (5) days of receiving such documents. Such documents, whether from this jurisdiction or any other jurisdiction shall constitute the charge and be conclusive evidence of the commission of the crime upon which the judgment and sentence is based and shall suffice as the basis for discipline in accordance with these rules.

[7] Oklahoma Rules Governing Disciplinary Proceedings, 5 O.S. 2021, Rule 7.7, Ch. 1, App. 1-A provides in pertinent part:

(a) It is the duty of a lawyer licensed in Oklahoma to notify the General Counsel whenever discipline for lawyer misconduct has been imposed upon him/her in another jurisdiction, within twenty (20) days of the final order of discipline, and failure to report shall itself be grounds for discipline.

(b) When a lawyer is the subject of a final adjudication in a disciplinary proceeding, except contempt proceedings, in any other jurisdiction, the General Counsel of the Oklahoma Bar Association shall cause to be transmitted to the Chief Justice a certified copy of such adjudication within five (5) days of receiving such documents. . . .

[8] In the Matter of the Reinstatement of Fraley, 2005 OK 39, ¶¶33-34, 115 P.3d 842 provides:

The constitution places in the judiciary the responsibility for legislation, prosecution and adjudication in the arena of professional discipline of lawyers. Tweedy v. State ex rel. Oklahoma Bar Association, 1981 OK 12, 624 P.2d 1049, 1054; In re Integration of the State Bar of Oklahoma, 1939 OK 178, 95 P.2d 113. Our authority over professional discipline is also conferred by statute....We perform the legislative and adjudicative functions directly, but the enforcement or prosecutorial role is placed by our rules with the organs of the Bar in order to meet the demands of constitutional due process. As we cannot constitutionally be both the judge and prosecutor, we may not control directly or indirectly those decisions made in the exercise of prosecutorial judgment as to whether to investigate and commence and prosecute charges. Tweedy v. State ex rel. Oklahoma Bar Association, 624 P.2d at 1054-1055; State ex rel. Oklahoma Bar Association v. Minter, 2001 OK 69, 37 P.3d 763, 768. Title 5 O.S. 2021 Ch. 1, App. 1-A Rule 1.1 provides:

This Court declares that it possesses original and exclusive jurisdiction in all matters involving admission of persons to practice law in this State, and to discipline for cause, any and all persons licensed to practice law in Oklahoma, hereinafter referred to as lawyers, and any other persons, corporations, partnerships, or any other entities (hereinafter collectively referred to as "persons") engaged in the unauthorized practice of law. This Court retains jurisdiction to impose discipline for cause on a lawyer whose name has been stricken from the Roll of Attorneys for non-payment of dues or for failure to complete mandatory continuing legal education. This Court further declares that a member of the Bar of this State may not take unto himself any office or position or shroud himself in any official title which will place him beyond the power of this Court to keep its roster of attorneys clean. Nothing in this declaration is intended to limit this Court's inherent power over anyone engaged in the practice of law. In the exercise of the foregoing jurisdiction, this Court adopts and promulgates the following rules which shall govern disciplinary and unauthorized practice of law proceedings.

[9] Title 5 O.S. 2021 Ch. 1, §12 provides:

The Supreme Court of the State of Oklahoma shall have exclusive power and authority to pass upon qualifications and fitness of all applicants for admission to practice law in the State of Oklahoma, and the qualifications of such applicants shall be those which are now or may be hereafter prescribed by the statutes of Oklahoma and the rules of the Supreme Court including, but not limited to, requiring a national criminal history record check as defined by Section 150.9 of Title 74 of the Oklahoma Statutes on applicants.

[10] Title 5 O.S. 2021 Ch. 1, App. 1, Rules Creating and Controlling the Oklahoma Bar Association, Art. I, §2 provides:

Attorneys admitted to practice law in Oklahoma are a part of the judicial system of Oklahoma and officers of its courts.

[11] The duties of the OBA as an enforcement and prosecution mechanism for attorney discipline are placed with the OBA for constitutional reasons. In the Matter of the Reinstatement of Fraley, see note 8, supra. Title 5 O.S. 2021 Ch. 1, App. 1, Rules Creating and Controlling the Oklahoma Bar Association, Art. I, §1 provides:

The Oklahoma Bar Association is an official arm of this Court, when acting for and on behalf of this Court in the performance of its governmental powers and functions.

[12] In the Matter of Reinstatement of Barrett, SCBD 7083, the attorney was suspended for the non-payment of dues, and for the failure to respond to the Court's order concerning a DUI arrest. We summarily granted his request for reinstatement because no clients were harmed by his conduct, and he got extensive treatment for his alcoholism.

 

 

Darby, J., with whom Kuehn, J., joins, dissenting:

¶1 I respectfully dissent from the majority's decision to suspend Respondent's license to practice law for two years and a day. The Oklahoma Rules Governing Disciplinary Proceedings, our jurisprudence, and our commitment to ethical and responsible self-governance of the legal profession, dictate that the appropriate discipline for Respondent is disbarment. Rule 7 of the Oklahoma Rules Governing Disciplinary Proceedings, 5 O.S. 2021 Ch. 1, App. 1-A, grants this Court discretion to determine a convicted attorney's fitness to practice law and, if necessary, the appropriate discipline for the conviction. I agree with the majority's finding that Respondent's conduct demonstrated an unfitness to practice law, but I cannot support any discipline less than disbarment.

¶2 It is important for this Court to provide clarity to Respondent and to the legal community as to the scope of Rule 7. In a Rule 7 disciplinary proceeding, this Court must determine two principle issues: "1) whether an attorney's conviction(s) or deferred sentence(s) demonstrate an unfitness to practice law, and if so, 2) the appropriate level of discipline based on all the facts and circumstances." State ex rel. Okla. Bar Ass'n v. Drummond, 2017 OK 24, ¶ 19, 393 P.3d 207, 214. Rule 8.4 of Oklahoma Rules of Professional Conduct and our jurisprudence guide us to determine the conduct that demonstrates an unfitness to practice law. According to Rule 8.4, attorney misconduct includes criminal activity that "reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." ORPC 8.4(b). In this case, Respondent plead guilty to manslaughter, a felony in Alabama. It should be undisputed that Respondent's conduct displayed a lack of responsibility, reliability, and judgment--each important to the practice of law.

¶3 Upon finding that Respondent's conviction demonstrates an unfitness to practice law, this Court is charged with determining the appropriate level of discipline based on all the facts and circumstances. ORPC 7.1. "[T]he scope of inquiry includes the particular lawyer's unfitness and not merely the type of crime the lawyer stands convicted of." State ex rel. Okla. Bar Ass'n v. Armstrong, 1990 OK 9, ¶ 8, 791 P.2d 815, 818. While our jurisprudence may be helpful, "the particular facts and circumstances of each case dictate its resolution." Drummond, 2017 OK 24, ¶ 28, 393 P.3d, at 217. I would hold that Respondent's decision to operate his motor vehicle while under the influence, and subsequently killing a bicyclist, plus his subsequent conduct, is enough to warrant disbarment. In State ex rel. Okla. Bar Ass'n v. Wyatt, 2001 OK 70, ¶ 9, 32 P.3d 858, 860, this Court disbarred an attorney convicted of manslaughter, reasoning the consequences of the attorney's irresponsibility were disastrous. Respondent's conduct mirrors that of the attorney in Wyatt, but the majority deviates from the Wyatt holding.

¶4 The Court "must consider evidence both in mitigation and any aggravating factors before imposing a final decision on discipline." Drummond, 2017 OK 24, ¶ 29, 393 P.3d, at 217. The majority considers "glowing recommendations" and Respondent's commitment to recovery as mitigating factors and almost commends his "self-suspension." I must highlight the facts not reflected in his manslaughter conviction: Respondent was driving under the influence; Respondent did not stop his car after he hit the bicyclist; Respondent was driving on the wrong side of the road on his return to the scene; police were on the scene and had erected temporary lighting by the time Respondent returned to the scene.

¶5 Notwithstanding the aggravating factors of this case, this Court has previously noted that mitigating factors will rarely override the requirement of disbarment. Wyatt, 2001 OK 70, ¶ 9, 32 P.3d, at 860 (quoting State ex rel. Okla. Bar Ass'n v. Raskin, 1982 OK 39, ¶ 23, 642 P.2d 262, 268). The proper outcome in this case--disbarment--aligns with our previous case law in both outcome and reasoning. Respondent's commitment to his sobriety is commendable, and the positive comments from the majority, Respondent's family and colleagues are encouraging. But they do not move the needle to his favor.

¶6 Further, we should reject any impulse to reward Respondent's "self-imposed suspension." This Court does not recognize an attorney's self-imposed suspension as "time served." The truth is, Respondent hid out from the Alabama Bar Association and the Oklahoma Bar Association hoping neither one would ever find out what he did that awful night. Respondent did not even tell OIDS about his Alabama felony. At the PRT hearing Respondent testified:

But in the instances of OIDS -- I can't say what I would have done if I would have gone to -- tried to go to work for one of the firms downtown, I don't know. But in the instances of OIDS, since there is a public high, you know, kind of a profile, if you will, if that had been asked, I would have said yes.

PRT Transcript, 190: 4-10. Also, at the PRT hearing, Respondent testified, "You know, at 4:00 that morning, I'd hit a deer in East Texas on the way down there and I just, at first, thought that was exactly what had happened here because I just did not see anything." Id., 198: 3-6. Then, Respondent testified, "I knew it was a deer in Texas because the sun was coming up and I could see it rolling in the ditch in my rearview mirror." Id., 235: 14-16. From my reading of the record Respondent's conduct after the manslaughter demonstrates that the only appropriate discipline is to disbar.

¶7 The purpose of imposing disciplinary actions, such as disbarment, is to safeguard "the interest of the public, of the courts, and of the legal profession." State ex rel. Okla. Bar Ass'n v. Albert, 2007 OK 31, ¶ 11, 163 P.3d 527, 532-33. The majority explained there was no express duty to self-report this conviction to the OBA, but this case provides the opportunity to support such a duty. We are a self-governing profession, and we cannot fulfill our duty to preserve the public trust and confidence in the legal profession if we do not require self-reporting. See Wyatt, 2001 OK 70, ¶ 9, 32 P.3d, at 860.

¶8 For the above reasons, I respectfully dissent from the majority's opinion, and would disbar Respondent.

 

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1939 OK 178, 89 P.2d 947, 185 Okla. 35, 
R. S. SMITH CONSTR. CO. v. SWINDELL
Cited

 
1939 OK 378, 95 P.2d 113, 185 Okla. 505, 
In re INTEGRATION OF STATE BAR OF OKLAHOMA
Cited

 
1990 OK 9, 791 P.2d 815, 
State ex rel. Oklahoma Bar Ass'n v. Armstrong
Discussed at Length

 
2001 OK 69, 37 P.3d 763, 72 OBJ 2604, 
STATE EX. REL. OKLAHOMA BAR ASSN. v. MINTER
Discussed

 
2001 OK 70, 32 P.3d 858, 72 OBJ 2617, 
STATE ex rel. OKLAHOMA BAR ASSN. v. WYATT
Discussed at Length

 
2003 OK 56, 71 P.3d 18, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. TAYLOR
Discussed

 
2005 OK 39, 115 P.3d 842, 
IN THE MATTER OF THE REINSTATEMENT OF FRALEY
Discussed

 
2007 OK 31, 163 P.3d 527, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. ALBERT
Discussed

 
2011 OK 84, 264 P.3d 1197, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MOTHERSHED
Discussed

 
2012 OK 29, 275 P.3d 133, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. CONRADY
Discussed at Length

 
2013 OK 42, 304 P.3d 453, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. COOLEY
Discussed

 
2014 OK 20, 323 P.3d 222, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BERNHARDT
Discussed

 
2014 OK 110, 340 P.3d 1, 
IN THE MATTER OF THE REINSTATEMENT OF MORGAN
Discussed

 
2015 OK 59, 359 P.3d 1122, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. KNIGHT
Discussed

 
2016 OK 13, 367 P.3d 509, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BOONE
Discussed

 
2017 OK 24, 393 P.3d 207, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. DRUMMOND
Discussed at Length

 
1981 OK 12, 624 P.2d 1049, 
Tweedy v. Oklahoma Bar Ass'n
Discussed

 
1982 OK 39, 642 P.2d 262, 
State, ex rel., Oklahoma Bar Ass'n v. Raskin
Discussed

Title 5. Attorneys and the State Bar

 
Cite
Name
Level

 
5 O.S. 12, 
Admission to Practice
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA